[Crim. No. 4482.   In Bank.   May 24, 1943.]

In re FRED MARTINEZ, on Habeas Corpus.

R. H. Schwab for Petitioner.

Hugh B. Bradford, City Attorney (Sacramento), for Respondent.

Ira H. Rowell and Roderick B. Cassidy, as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—Petitioner was convicted in the Police Court of the City of Sacramento of violating a municipal

260

ordinance regulating and fixing the rates of taxicabs. On appeal, the judgment of conviction was affirmed by the superior court. Petitioner now seeks his discharge on habeas corpus contending that the ordinance is unconstitutional upon the ground exclusive power to fix such rates is vested in the Railroad Commission. Petitioner does not claim that the ordinance is unreasonable or discriminatory but contends that the city is without power to enact any ordinance fixing taxicab rates.

Petitioner relies on section 23 of article XII of the Constitution, which reads in part as follows:

"Every private corporation, and every individual or association of individuals, owning, operating, managing, or controlling any commercial railroad, interurban railroad, street railroad, canal, pipe line, plant, or equipment, or any part of such railroad, canal, pipe line, plant or equipment within this State, for the transportation or conveyance of passengers, or express matter, or freight of any kind, including crude oil, or for the transmission of telephone or telegraph messages, or for the production, generation, transmission, delivery or furnishing of heat, light, water or power or for the furnishing of storage or wharfage facilities, either directly or indirectly, to or for the public, and every common carrier, is hereby declared to be a public utility subject to such control and regulation by the Railroad Commission as may be provided by the Legislature, and every class of private corporations, individuals, or associations of individuals hereafter declared by the Legislature to be public utilities shall likewise be subject to such control and regulation. The Railroad Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the State of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the Legislature, and the right of the Legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution. . . ."

He argues that inasmuch as this constitutional provision defines a public utility as including every common carrier, which under section 2168 of the Civil Code embraces taxicabs as carriers of persons, the rates of taxicabs are therefore subject to regulation by the Railroad Commission alone. This

contention entirely disregards that portion of the quoted constitutional provision which declares that the public utilities therein defined (including common carriers) shall be "subject to such control and regulation by the Railroad Commission *as may be provided by the Legislature.*" The section further provides that "The Railroad Commission *shall have and exercise such power and jurisdiction to supervise and regulate public utilities . . . and to fix the rates to be charged* for . . . services rendered by public utilities *as shall be conferred upon it by the Legislature. . . .*" (Italics ours.)

The italicized language is clear in its declaration that only such of the utilities therein designated, including common carriers operating within a municipality, may be regulated by the Railroad Commission as are made subject to such regulation by legislative enactment. In other words, while a taxicab is a common carrier (code sec. *supra; Bezera* v. *Associated Oil Co.,* 117 Cal.App. 139, 143 [3 P.2d 622]; 45 A.L.R. 300) and section 23 of article XII of the Constitution declares every common carrier to be a public utility, the constitutional section further expressly declares that the public utilities therein designated shall be subject to such control and regulation by the Railroad Commission "as may be provided by the Legislature." To determine whether taxicabs and the rates thereof are subject to the jurisdiction of the Railroad Commission we must therefore look to the statutes enacted by the Legislature.

Contrary to petitioner's contention we find nothing in the Public Utilities Act (Stats. 1915, p. 115, as amended; 2 Deering's Gen. Laws of 1937, Act 6386, p. 3119) indicating a legislative intention that taxicabs are subject to regulation by the Railroad Commission. Section 1 of the act provides that it "shall apply to the public utilities and public services *herein described.*" Subdivision (dd) of section 2, provides that "The term 'public utility', *when used in this act,* includes every common carrier [and a long list of other utility corporations] where the service is performed for . . . the public. . . ." Subdivision *l* of section 2 provides that "The term 'common carrier', *when used in this act,* includes every railroad corporation, street railroad corporation; express corporation; freight forwarder; dispatch, sleeping car, dining car, drawing room car, freight, freight line, refrigerator, oil, stock,

fruit, car loaning, car renting, car loading and every other car corporation or person. . . ." (Italics ours.)

Nowhere in the quoted provisions of the Public Utilities Act, nor in its other provisions, do we find any reference to taxicabs or taxicab companies. Each of the many agencies designated in subdivisions (dd) and (l) is specifically mentioned and described in detail or is included in groups carefully described in the act. If the Legislature had intended to include taxicabs it would not have omitted reference to them while including detailed descriptions of all other agencies covered by the act, some of which perform similar services. Moreover, references in other parts of the act to common carriers "subject to the provisions of this act" indicate a legislative intention not to include all common carriers.

In an amicus curiae brief filed in this proceeding at the request of the court, the Railroad Commission is in accord with our conclusion that under section 23 of article XII of the Constitution it has only such power to regulate public utilities and to fix rates as shall be conferred upon it by the Legislature. The commission states it has never attempted to regulate taxicabs and has consistently taken the position that its statutory jurisdiction extends only to fixed termini or regular route operation. The position taken by the commission in the past is supported by sections $2\frac{1}{4}$ (b), $2\frac{3}{4}$ and $50\frac{1}{4}$ of the act, which limit the regulation by the commission of passenger stage corporations and highway common carriers to those operating "between fixed termini or over a regular route." Further, the first cited section excludes from its provisions "those whose operations are exclusively within the limits of a single incorporated city."

In the absence of legislative enactment conferring jurisdiction on the Railroad Commission to regulate taxicabs and to fix the rates thereof, we are satisfied that the city of Sacramento had the power to pass this ordinance under the police power granted by section 11 of article XI of the Constitution. The section provides that "any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (See, also, sec. 17 of Charter.) The ordinance is confined in its effect to service performed within the city and it is not in conflict with general law. The regulation of jitneys has been held to represent a valid exercise of the police power of a municipality. (*In re Cardinal,*

170 Cal. 519 [150 P. 348, L.R.A. 1915 F, 850].) Decisions of other states support the conclusion that matters of this kind are within the police powers of cities. (*Clem* v. *City of La Grange*, 169 Ga. 51 [149 S.E. 638, 65 A.L.R. 1361] ; *Yellow Taxicab Co.* v. *Gaynor*, 82 Misc. 94 [143 N.Y.S. 279, 289] ; *People* v. *Smith*, 15 N.Y.S.2d 459; *State* v. *Gamelin*, 11 Vt. 245 [13 A.2d 204] ; 65 A.L.R. 1364.) In the Smith case, *supra*, it is said ''Public interest is involved in taxicab operation and therefore is subject to municipal regulation.'' In 3 McQuillan, Municipal Corporations (2d ed.) 240, section 993, it is stated that ''Motor vehicles, autobusses or jitneys run for hire are clearly within the range of necessary, appropriate and reasonable police regulations, and this of course is true of taxicabs so common in all cities and towns.'' The efficient and safe operation of taxicabs is a matter of concern to the people of a city and the regulation thereof and the fixing of rates contributes to the maintenance of safe standards of service. The state not having occupied the field, municipalities may do so in the exercise of the police power.

The writ is discharged and the petitioner is remanded to custody.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.