## BUCK ET AL. *v.* CALIFORNIA.

No. 165.   Argued November 28–29, 1951.—Decided March 10, 1952.

*Manuel Ruiz, Jr.* argued the cause for appellants.   With him on the brief was *Morris Lavine.*

*Duane J. Carnes* argued the cause for appellee.   With him on the brief were *Edmund G. Brown,* Attorney General of California, *Clarence A. Linn,* Assistant Attorney General, and *Carroll H. Smith.*

Mr. Justice Minton delivered the opinion of the Court.

Appellants, American citizens, are taxicab drivers. They were arrested by the Sheriff of San Diego County, California, and charged with driving taxicabs in the unincorporated area of San Diego County without a permit from the Sheriff as required by § 9 of Ordinance 464, the pertinent provisions of which are set forth in the margin.* The facts were stipulated without the taking of any evidence. From the stipulation we learn that appellants had picked up passengers across the line in Mexico and were transporting them across the unincorporated area of San Diego County to points not in the unincorporated area when they were arrested. They had made oral requests for permits from the Sheriff, rather than application in writing on the forms provided therefor, as required by § 9 of the ordinance. When these requests

---

*"Applicants for such permits shall file applications therefor with the sheriff of the County of San Diego on a form furnished by the sheriff which, when completed, will contain full personal information concerning the applicant.

"Upon obtaining a permit as herein required the holder of such permit shall be entitled to an identification card of such design, and bearing such number as the sheriff may prescribe, upon payment of a fee of $1.00 annually, therefor, which shall be paid by the applicant to the tax collector and shall be due on the 1st day of June of each year. Such card shall be carried by the permittee during all business hours and shall not be transferable.

"Each applicant for a permit shall be examined by the sheriff as to his knowledge of the provisions of this ordinance, the Vehicle Code, traffic regulations and the geography of the county, and if the result of the examination is unsatisfactory he shall be refused a permit. The sheriff may deny the application or having issued the permit may revoke the same if the sheriff shall determine that the applicant or taxicab driver is of bad moral character or is guilty of violation of any of the provisions of this ordinance or of any lawful regulation promulgated pursuant thereto or has been convicted of any offense involving moral turpitude."

were denied, they continued to transport passengers, although upon advice of counsel they did not pick up or discharge any passengers in the unincorporated area. We take their action to mean that they claimed that because they were engaged in foreign commerce, they had either the right to a permit without complying with the other provisions of the ordinance or the right to operate without a permit. Appellants contend that the County had no right to burden that foreign commerce by regulation.

They were found guilty of violating § 9 of the ordinance by the Justice's Court of National Township, San Diego County. The Superior Court of California, in and for the County of San Diego, Appellate Department, affirmed the conviction and allowed an appeal to this Court. 101 Cal. App. 2d Supp. 912, 226 P. 2d 87. We noted probable jurisdiction under 28 U. S. C. § 1257 (2).

The Motor Carrier Act of 1935 gave broad power of regulation over motor vehicles to the Interstate Commerce Commission; but Congress partially excluded taxicabs from such regulation in the following words:

> "Nothing in this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include . . . (2) taxicabs, or other motor vehicles performing a bona fide taxicab service, having a capacity of not more than six passengers and not operated on a regular route or between fixed termini . . . ." 49 Stat. 545, 49 U. S. C. § 303 (b).

The Interstate Commerce Commission, acting under authorization of Congress, has promulgated regulations establishing minimum qualifications for drivers of motor vehicles for carriers, including taxicabs, engaged in interstate and foreign commerce, 49 CFR § 192.2. This does

not prevent the state or a subdivision thereof, in the exercise of its police power, from providing additional specifications as to qualifications, not inconsistent or in conflict with the regulations of the Interstate Commerce Commission. Especially is this true since the regulations of the Commission are only minimum.

As the ordinance is not in conflict with and may be construed consistently with the federal regulations and in keeping with the latter's purpose, they may stand together. *Kelly* v. *Washington,* 302 U. S. 1, 10; *Missouri, K. & T. R. Co.* v. *Harris,* 234 U. S. 412, 419; *Savage* v. *Jones,* 225 U. S. 501, 539; *Reid* v. *Colorado,* 187 U. S. 137, 148.

California has a legitimate interest in the kind and character of persons who engage in the taxicab business in the State. The authority to issue permits has been granted by the State to the Board of Supervisors of each county. *In re Martinez,* 22 Cal. 2d 259, 262, 138 P. 2d 10. Such delegation by the State to the county has been approved by this Court. *Sprout* v. *South Bend,* 277 U. S. 163, 171, 172.

The operation of taxicabs is a local business. For that reason, Congress has left the field largely to the states. Operation of taxicabs across state lines or international boundaries is so closely related to the local situation that the regulation of all taxicabs operating in the community only indirectly affects those in commerce, and so long as there is no attempt to discriminatorily regulate or directly burden or charge for the privilege of doing business in interstate or foreign commerce, the regulation is valid. The operation is "essentially local," and in the absence of federal regulation, state regulation is required in the public interest. *Panhandle Pipe Line Co.* v. *Michigan Pub. Serv. Comm'n,* 341 U. S. 329, 333. Even if appellants were engaged in foreign commerce at the time of their arrest and did not intend to engage in intra-

state commerce, the permit was not required *because* they were engaged in foreign commerce. Under the permit they were free to engage in both intrastate and foreign commerce. The ordinance requires a written application for a permit, a small fee, and compliance with certain standards relating to the service and to the public safety. Our prior cases would not justify us in holding that the ordinance is an unreasonable burden on foreign commerce in its application to the stipulated facts here. *Aero Transit Co.* v. *Georgia Comm'n*, 295 U. S. 285; *Hicklin* v. *Coney*, 290 U. S. 169; cf. *Railway Express Agency* v. *New York*, 336 U. S. 106, 111.

Thus far we have dealt only with § 9 of the ordinance, which exacts the $1 fee for a driver's permit. That is all the court we are reviewing passed upon. That is all appellants were tried and convicted for. But it is suggested that the permit *may have been denied* them because they had violated § 4 of the ordinance by not getting a taxicab operator's license and paying the $50 fee therefor. But appellants may also have been denied permits under § 9 for the reason that oral requests only were made and not written applications to the Sheriff, as required by the ordinance, or the Sheriff may have found them without knowledge as to the geography of the county and traffic regulations, or that they were persons of bad moral character or had been convicted of a crime involving moral turpitude, all adequate state grounds. In that event, this Court would not take jurisdiction to pass upon the question. Chief Justice Hughes, speaking for the Court in *Lynch* v. *New York ex rel. Pierson*, 293 U. S. 52, 54–55, said:

> "[I]f it does not appear upon which of two grounds the judgment was based, and the ground independent of a federal question is sufficient in itself to sustain it, this Court will not take jurisdiction." (Citing numerous cases.)

This Court should not be reaching for constitutional questions to cast doubt upon state legislation not before the Court. The constitutional validity of the $50 requirement is not now before the Court and was not before the lower court.

The judgment of the Superior Court of California is

*Affirmed.*

MR. JUSTICE REED, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE JACKSON and MR. JUSTICE BURTON join, dissenting.

The appellants are American citizens who were prosecuted in the Justice's Court of National Township, County of San Diego, California, for violating San Diego County Ordinance No. 958 (New Series), amending § 9 of Ordinance 464 (New Series), as amended by Ordinance 609 (New Series). The complaint specified that appellants violated § 9 of the ordinance by wilfully driving their taxicabs in the unincorporated area of the County of San Diego without first having obtained a written permit from the Sheriff authorizing them to do so.

Under the terms of § 9, every driver of a taxicab in the unincorporated area of the County, hereinafter called simply the County, is required to obtain a written permit from the Sheriff.[1] After the permit is issued, the County exacts a $1 fee for an identification card. The Sheriff has authority to deny an application for the permit if

---

[1] "Section 9. (*Amended by Ord. No. 609 (New Series) adopted 5–12–47; and again amended by Ord. 958 (New Series) adopted 4–10–50, to read as follows:*) It shall be unlawful for any person to drive or to be in actual physical control of any taxicab in the unincorporated area of the County of San Diego without first obtaining a permit in writing so to do from the sheriff of the County of San Diego.

"Applicants for such permits shall file applications therefor with the sheriff of the County of San Diego on a form furnished by the

he determines that the applicant (1) is of bad moral character; or (2) has failed to comply with any of the other provisions of the ordinance; or (3) has been convicted of an offense involving moral turpitude. Section 13 provides that a violation of § 9 is a misdemeanor, punishable by a fine of not more than $500, or imprisonment for not more than six months, or both.

Appellants were convicted of violating § 9, and each was fined $250. They appealed to the Superior Court of California, in and for the County of San Diego, Appellate Department, where the judgments were affirmed. 101 Cal. App. 2d Supp. 912, 226 P. 2d 87. That court, by allowing an appeal to this Court, confirms our understanding that no further review was available in the California courts.[2] Accordingly, we noted probable jurisdiction. 28 U. S. C. § 1257 (2).

---

sheriff which, when completed, will contain full personal information concerning the applicant.

"Upon obtaining a permit as herein required the holder of such permit shall be entitled to an identification card of such design, and bearing such number as the sheriff may prescribe, upon payment of a fee of $1.00 annually, therefor, which shall be paid by the applicant to the tax collector and shall be due on the 1st day of June of each year. Such card shall be carried by the permittee during all business hours and shall not be transferable.

"Each applicant for a permit shall be examined by the sheriff as to his knowledge of the provisions of this ordinance, the Vehicle Code, traffic regulations and the geography of the county, and if the result of the examination is unsatisfactory he shall be refused a permit. The sheriff may deny the application or having issued the permit may revoke the same if the sheriff shall determine that the applicant or taxicab driver is of bad moral character or is guilty of violation of any of the provisions of this ordinance or of any lawful regulation promulgated pursuant thereto or has been convicted of any offense involving moral turpitude.. . .."

[2] See Cal. Penal Code, § 1466; Cal. Const., Art. VI, § 4; *People* v. *McKamy,* 168 Cal. 531, 143 P. 752; *People* v. *Reed,* 13 Cal. App. 2d 39, 56 P. 2d 240.

Of the multiple errors assigned, only one need be considered, for it disposes of the case: That the California courts erred in holding that § 9 of Ordinance No. 464, as construed and applied to this complaint, does not exceed the constitutional limits of the power of San Diego County to regulate foreign commerce. This question was raised in the trial court by motion for arrest of judgment, and was treated as properly in issue by both California courts. Clearly they rejected, as a matter of California law, appellee's contention that the constitutional questions were not properly presented because appellants had failed to exhaust the administrative or other judicial remedies allegedly available for review of the denial of the driver's permits, the Superior Court saying: ". . . we will have to decide whether the ordinance is valid as tested by the commerce clause . . . ."[3] We are, of course, bound by this determination of California law. It is therefore unnecessary to consider whether there was available to appellants any effective method to test in the California courts the constitutionality of the denial of their permits, or whether—if such remedies were available—the failure to exercise them would preclude the defense of unconstitutionality in this criminal prosecution.

The case was tried on a stipulation of facts. It is not disputed, therefore, that appellants applied for the driver's permits required by § 9 of the ordinance.[4] These applications were denied, although the record does not show the reasons for the denials. The Superior Court stated: "Each of the defendants had applied for and been

---

[3] Opinion of the Superior Court, Appellate Department, 101 Cal. App. 2d Supp. at 914, 226 P. 2d at 89.

[4] Since appellants are complaining of the denial of the permits, not of exaction of the $1 fee, we assume, without deciding, that San Diego County can constitutionally require a $1 fee for the identification card, on the theory that the $1 is reasonably calculated to reimburse the County for the costs of administering its valid traffic regulations.

denied the license [permit] required by the ordinance in question." No issue was made as to the sufficiency of the application, and the opinion makes no point of any irregularity in applying. Thereafter, appellants, on the advice of counsel, continued nonetheless to transport persons by taxicab to and from Mexico across the unincorporated territory of the County. It is this transportation, after denial of the driver's permits, for which appellants are being prosecuted in this case.

The stipulation further discloses that appellants neither picked up nor discharged passengers in San Diego County. Their only operations in the County consisted of driving passengers through the County, to and from Mexico. So far as the record shows, appellants are engaged solely in foreign commerce. Thus it is clear that San Diego County, by refusing to issue the driver's permits, is attempting by regulation to exclude appellants from transporting persons in foreign commerce across San Diego County unless they meet the qualifications for drivers established by the ordinance. The issue is whether this exclusion can be reconciled with the constitutional delegation to Congress of the power to regulate foreign commerce.

Generally, it is well settled that the power to regulate foreign commerce is lodged in the Federal Government. U. S. Const., Art. I, § 8. Of course, this does not mean that the states are powerless in all cases to take reasonable measures to protect their legitimate interests.[5] For example, in the absence of conflicting congressional

---

[5] *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, 211–212: "In the absence of applicable federal regulation, a State may impose non-discriminatory regulations on those engaged in foreign commerce 'for the purpose of insuring the public safety and convenience; . . . a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded.' *Sprout* v. *South Bend,* 277 U. S. 163, 169."

legislation,[6] we assume that San Diego County might require that loads should not exceed a reasonable minimum weight and that, if appellants violated such regulation, the County could properly prohibit them from driving their taxicabs across the County.[7]

The burden, of course, is upon appellants as challengers of the validity of the ordinance to establish its unconstitutionality. That burden is met prima facie when they show that the ordinance exacts payment from foreign commerce of fifty dollars ($50) for an operator's license, note 10, *infra,* plus the driver's permit. The stipulated facts show the foreign commerce; the opinion of the trial court shows that appellants relied upon the $50 license fee as an unconstitutional burden.[8] Thereupon the government body, seeking to regulate, must make it affirmatively appear in some way that the regulation is directed toward an incident subject to state control. Cf. *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186; *Ingels* v. *Morf,* 300 U. S. 290, 294; *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583, 599. A taxing municipality must show, for example, that the tax on interstate commerce is in-

---

[6] Because the regulation here attacked should fall in any event, it is not necessary to consider what, if any, effect the existing federal legislation might have on the validity of this ordinance. See 49 U. S. C. (1946 ed.) § 303 (b) (2). See also 49 CFR (1949 ed.) § 192.2.

[7] *South Carolina State Highway Department* v. *Barnwell Bros., Inc.,* 303 U. S. 177. Cf. *Morf* v. *Bingaman,* 298 U. S. 407; *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U. S. 653.

[8] The opinion reads in part: "The defendants . . . advance the following contentions: . . . That the fifty dollar license fee is an unreasonable burden on foreign commerce. . . . The defendants contend that the fifty dollar annual license fee is an unreasonable burden on foreign commerce. There is no evidence in the stipulated facts as to the cost of enforcing the Ordinance, and, in the absence of such evidence, the Court will assume that the fee was reasonable." This objection was pressed throughout the appeal in the Superior Court and in this Court.

tended to compensate for facilities provided by the state. *Aero Mayflower Transit Co.* v. *Commissioners,* 332 U. S. 495, 505; *Capitol Greyhound Lines* v. *Brice,* 339 U. S. 542; see *Elgin* v. *Capitol Greyhound Lines,* 192 Md. 303, 310, 318, 64 A. 2d 284, 288, 291–292. This does "not remotely imply that the burden is on the taxing authorities to sustain the constitutionality of a tax. But where the power to tax is not unlimited, validity is not established by the mere imposition of a tax." *Mullaney* v. *Anderson,* 342 U. S. 415, 418.

While this permit might have been properly denied for an adequate state reason and not for lack of the $50 operator's license, it is incumbent on the State (or, in this case, the County) to state that reason at the trial. Appellants need not, and as a practical matter could not, explain why the Sheriff of San Diego County denied their permits. The alternative to requiring explanation by the County of the reason for refusing a license would be to compel the applicants to prove their compliance with all valid requirements. Thus, assuming that the remainder of the ordinance is valid, they would be compelled under the terms of the ordinance to show, for example, that the Sheriff believes that they are of good moral character, and that they have never been convicted of an offense involving moral turpitude. In view of the fact that only the County through its officers can know the reasons for denial of the permits, and can, by placing these reasons on the record, narrow the issues to manageable proportions and give appellants a fair opportunity to present their objections, the burden of going forward with this evidence must rest on the County.

In this case, San Diego County has offered no explanation for its action. The record shows no basis for any conclusion by us. Cf. *Hooven & Allison Co.* v. *Evatt,* 324 U. S. 652, 658. We cannot determine, on this record, whether the Sheriff denied the permits because he had

formed a low opinion of appellants' moral character,[9] or because the Sheriff was dissatisfied with their knowledge of the geography of the County, or for lack of the $50 operator's license. Without some explanation, it is impossible for this Court to decide that the County is justified in excluding appellants from engaging in foreign commerce in the County. Cf. *Smith* v. *Cahoon*, 283 U. S. 553, 565. In comparable situations this Court has felt the need of greater particularity for adjudication. *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 575.

Of course, it might be unnecessary for the County to explain the precise reason why the permits were denied, if the ordinance itself limited the Sheriff to constitutionally valid reasons. But this ordinance does not so limit the Sheriff's decisions. For example, § 9 of the ordinance in question here contemplates that the Sheriff will deny a driver's permit to any person who has failed to comply with the other provisions of the ordinance. While we cannot be sure, on this record, why the Sheriff refused to issue the permits to appellants, it is likely that his refusal was based on the fact that appellants had not previously acquired a license to operate their taxicabs in San Diego County, as required by § 4 of the ordinance.[10]

---

[9] The Superior Court opinion refers to bad moral character as a proper ground for denial of permits. Without a record showing as to the facts upon which that conclusion is based, we cannot appraise the significance of the comment.

[10] "Section 4. (*Amended by Ord. No. 958 adopted 4–10–50, and amended again by Ord. No. 964 (New Series) adopted 5–22–50 to read as follows:*) Within 10 days from the effective date of this ordinance every taxicab operator shall apply to the sheriff and procure from the Tax Collector a license and pay an annual license fee of $50.00 (plus $1.00 per year per taxicab), which shall be paid by the applicant to the Tax Collector and shall be due on the first day of June of each year. Licenses issued subsequent to the first day of September, the first day of December, and the first day of March shall be issued at a quarterly reduction of $12.50 per quarter. . . ."

That section imposes an annual flat fee of $50 (plus $1 for each taxicab) on the privilege of operating taxicabs in San Diego County.  There is no suggestion that the $50 fee is levied only as compensation for the use of the roads of the County, or to defray the expense of regulating motor traffic.  Clearly such a tax for the privilege of engaging in foreign commerce could not constitutionally be imposed by San Diego County.  Cf. *Sprout* v. *South Bend,* 277 U. S. 163; *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183; *Ingels* v. *Morf,* 300 U. S. 290; *Spector Motor Service, Inc.* v. *O'Connor,* 340 U. S. 602.   See *Crutcher* v. *Kentucky,* 141 U. S. 47, 57; *International Textbook Co.* v. *Pigg,* 217 U. S. 91; *Aero Mayflower Transit Co.* v. *Commissioners,* 332 U. S. 495.   Nor can the County indirectly enforce the unconstitutional privilege tax of § 4 by denying the driver's permit without explanation.  Thus it is clear that this ordinance purports to impose an unconstitutional burden on foreign commerce.   While it is possible that appellants' permits were denied for some other, and valid, reason, only the County (not appellants) could show that this is true.   Since the County has offered no explanation for prohibiting appellants from engaging in foreign commerce within the County, the judgment should be reversed and the cause remanded for such action as might be deemed desirable and not inconsistent with this opinion.