**GOLDEN STATE TRANSIT CORPORATION, Plaintiff-Appellant,**

v.

**CITY OF LOS ANGELES, Defendant-Appellee.**

CA No. 83-5903.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1983.

Decided Feb. 28, 1984.

Joseph M. Alioto, San Francisco, Cal., for plaintiff-appellant.

John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant-appellee.

Before BROWNING and NORRIS, Circuit Judges, and SOLOMON,\* District Judge.

SOLOMON, Judge:

## Introduction

■ Golden State Transit Corporation d/b/a Yellow Cab of Los Angeles (Yellow Cab) brought this action against the City of Los Angeles (City) when the City refused to renew Yellow Cab's taxicab franchise. Yellow Cab sought a preliminary injunction and moved for partial summary judgment contending that the City committed a per se violation of section 1 of the Sherman Act, 15 U.S.C. § 1. The district court denied both requests and instead granted the City a partial summary judgment dismissing Yellow Cab's antitrust claim.[1] The district court based both decisions on its conclusion that the City was protected from antitrust liability by the *Parker* doctrine. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

## Procedural History

In 1981, when Yellow Cab filed this action against the City, it did not allege antitrust violations. Instead, it alleged that the City's refusal to renew its taxicab franchise violated the Supremacy Clause and also deprived it of due process and equal protection of the law in violation of 42 U.S.C. § 1983. In that proceeding, the district court granted a preliminary injunction which prevented the City from terminating Yellow Cab's franchise, 520 F.Supp. 191. This court reversed. *Golden State Transit v. City of Los Angeles,* 686 F.2d 758 (9th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). We held that Yellow Cab had little likelihood of success on the merits.

On remand, Yellow Cab amended its complaint to include a cause of action alleging that the City violated section 1 of the Sherman Act, 15 U.S.C. § 1. Yellow Cab again moved for a preliminary injunction. It also requested a partial summary judgment on its contention that the City's regulations constituted a per se violation of section 1 of the Sherman Act.

The district court, 563 F.Supp. 169, denied the request for a preliminary injunction. It held that Yellow Cab was not likely to succeed on the merits of its antitrust cause of action because the City was not subject to federal antitrust laws under the *Parker* doctrine. Based on the *Parker* doctrine, the district court also denied Yellow Cab's motion for partial summary judgment. Instead, the court granted the City partial summary judgment.[2]

## Facts

Yellow Cab operates a taxicab company in Los Angeles. Taxicab operators must have a franchise which may only be granted by the City. Los Angeles Administrative Code §§ 13.4, 71.02(b). Applications for a franchise are first reviewed by the City's Board of Public Utilities and Transportation. The Board then makes recommendations to the City Counsel. Los Angeles City Charter § 211. The City Council ultimately decides whether to grant an application.

All thirteen of the taxicab franchises in Los Angeles expired in 1980, and all of the franchise holders applied to the City for renewal. The City temporarily extended all of the franchises for five months to give it time to evaluate the applications. The franchise of Yellow Cab permitted it to

---

\* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The City did not move for summary judgment. Nevertheless, a court may on its own grant summary judgment in favor of a nonmoving party if it appears that the moving party could not prevail even if a trial were held. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982).

2. Yellow Cab's causes of action alleging violations of the Supremacy Clause and the Due Process Clause are pending before the district court. The district court entered an appropriate certification on the partial summary judgment under Rule 54(b) of the Federal Rules of Civil Procedure, and the order is therefore a final one appealable under 28 U.S.C. § 1291.

operate 363 cabs, approximately 30% of the total in the City. The Board recommended that the City Council renew Yellow Cab's franchise. Before the Council acted, the Teamsters struck the company and requested the City Council members and other city officials to withhold Yellow Cab's franchise until Yellow Cab entered into a new collective bargaining agreement with the Teamsters. After a hearing, the City Council voted 11–1 to deny Yellow Cab's application for renewal.[3]

In addition to controlling the number of taxicab franchises, the City sets the rates charged by all of the taxicabs in the City. It refused to approve Yellow Cab's requested increase, but it approved all of the increases requested by Yellow Cab's competitors. The City contends that it did not grant the increase because Yellow Cab failed to submit the required financial information.

Yellow Cab has not operated in the City since May, 1983.

### Discussion

The parties agree that whether federal antitrust restrictions apply to the City is a question of law to be reviewed *de novo*.

In *Parker v. Brown, supra,* the Supreme Court held that federal antitrust laws do not apply to a restraint of trade imposed as 'an act of government' by the state 'as sovereign.' 317 U.S. at 352, 63 S.Ct. at 314. In that case, the State of California adopted a program to regulate the state's raisin crop which kept the price of raisins artificially high and which prevented the appellee from freely marketing his crop in interstate commerce.

Thereafter, the Court analyzed the application of *Parker* to states and state agencies. In *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the issue was whether the *Parker* doctrine applied to cities. The City of Lafayette brought an action against utility companies, and the

companies counterclaimed alleging antitrust violations. The plurality opinion held that cities, "simply by their status as such, are not within the *Parker* doctrine," but that anticompetitive conduct may be exempt from antitrust regulation when a city acts "pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1137. The plurality opinion emphasized that state policy pursued by the city must be "clearly articulated and affirmatively expressed." *Id.* at 410, 98 S.Ct. at 1135.

In *Community Communications Co., Inc. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), a majority of the Court adopted this standard. The city was organized as a "home rule" municipality under the state constitution which gave it "extensive powers of self-government in local and municipal matters . . . ." 455 U.S. at 43, 102 S.Ct. at 837. The city granted the petitioner a non-exclusive contract to provide cable television service to a limited section of the city. The state constitution placed no restrictions on what the City could do in its regulation of cable television, and the state did not regulate the field. The city later enacted a temporary moratorium on cable services that prohibited the petitioner from expanding to other parts of the city. The petitioner sought to enjoin the moratorium on the ground that it violated section 1 of the Sherman Act. The city contended that under the *Parker* doctrine it was not subject to antitrust restraints.

The Court held that the city could not avail itself of the *Parker* doctrine because the state's "mere neutrality respecting the municipal actions challenged as anticompetitive," 455 U.S. at 55, 102 S.Ct. at 843, did not satisfy the requirement of a clearly articulated and affirmatively expressed state policy. The state, when it gave the city home rule powers which permitted it to do as it pleased, was merely neutral.

---

**3.** The Council followed the Board's recommendation on every application except that of Yellow Cab.

To prove that a policy is clearly articulated and affirmatively expressed, the City must demonstrate not only the existence of a state policy to displace competition with regulation, but also that the legislature contemplated the kind of actions alleged to be anticompetitive. *Parks v. Watson,* 716 F.2d 646, 663 (9th Cir.1983) (per curiam). Both tests are satisfied here.

The district court relied on the California Constitution and on the Public Utility Code as evidence of a state policy to displace competition with regulation.

Under the state constitution, taxicabs and their owners are classified as public utilities which may be controlled by the state legislature. Cal. Const., art. XII, § 3. In addition, the Public Utilities Commission "may fix rates and establish rules for transportation of passengers and property by transportation companies...." Cal. Const., art. XII, § 4.

The legislature has exercised control over taxicabs in the Passenger Charter-Party Carriers' Act, Cal.Pub.Util.Code §§ 5351 *et seq.*. Under the Act, a carrier (which includes taxicabs) must obtain a certificate of public convenience and necessity. *Id.* § 5371. To obtain a certificate, a carrier must pay a filing fee and an application fee, §§ 5373, 5373.1, and must establish its fitness and financial responsibility, §§ 5374, 5391. An application to operate in an area already served by a certificate holder is available only if the applicant proves that the existing service is not satisfactory and adequate. § 5375.1. The Act contains detailed provisions for cancellation, revocation or suspension of a certificate. § 5378. It specifies the methods a carrier may use to compute its charges to a customer. § 5401. It sets forth fines and penalties for violation of the Act. §§ 5411–5419.

Appellant argues that the California Court of Appeal in *People v. City and County of San Francisco,* 92 Cal.App.3d 913, 155 Cal.Rptr. 319 (1979), precludes the conclusion that the Passenger Charter-Party Carriers' Act articulates a clear state policy in favor of taxicab regulation. *City and County of San Francisco* held that a municipality has the authority to set taxicab fares. We agree with the holding but do not agree with the reasoning of the state court of appeals. The court found that the statute did not grant the state commission any authority over taxicabs and that cities could determine whether to regulate taxicabs. *See City and County of San Francisco,* 92 Cal.App.3d at 924, 155 Cal.Rptr. at 326. Relying on these court of appeal decisions, appellants argue that the state statute cannot be the source of a policy to displace competition with taxicab regulation. We disagree.

We believe that the California Supreme Court will interpret the statutory scheme differently than it did in its earlier decisions which interpreted statutes then in effect and upon which the California Court of Appeal relied. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Estrella v. Brandt,* 682 F.2d 814, 818 (9th Cir.1982).

The California Supreme Court initially held that the state commission had no regulatory authority over taxicabs because, among other reasons, taxicabs were not specifically included in the statutory definition of a public utility or common carrier. *See In re Martinez,* 22 Cal.2d 259, 138 P.2d 10 (1943). Later, the California Supreme Court in *People v. Western Airlines Inc.,* 42 Cal.2d 621, 268 P.2d 723 (1954), rejected this analysis and held that an airline was a public utility even though not specifically listed in the statute. Nevertheless, the California Court of Appeal in *City and County of San Francisco* relied on *Martinez.* In *Martinez,* however, the Supreme Court interpreted a substantially different statute than the one now in effect. The provisions upon which the Supreme Court relied in *Martinez* are not part of the present statute. In addition, the statute analyzed in *Martinez* did not contain language comparable to that found in the present section 5353(g). We are convinced that the California Supreme Court will hold taxicabs are within the coverage of the Passenger Charter-Party Carriers' Act because taxicabs fit squarely within the statutory definition of a

carrier subject to state regulation. *See* § 5360. We find no evidence of a legislative intent to exclude taxicabs from the statute's coverage. We believe that under section 5353(g) if a city does *not* license or regulate taxicabs, the state commission has the authority to do it. We do not believe that the California Supreme Court will interpret the statute to render this section meaningless as the court of appeal did in *City and County of San Francisco. See Estrella v. Brandt,* 682 F.2d at 818. If the statute is read to apply to taxicabs, as we believe it must be, we find a "clearly articulated and affirmatively expressed state policy" which allows municipalities to displace competition with regulation in the taxicab industry.

The final question is whether the City must show active state supervision to qualify for *Parker* immunity. We hold that it does not.

In *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Court adopted a two-part test to determine whether a state's involvement is sufficient to establish *Parker* immunity. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as a state policy'; second, the policy must be 'actively supervised' by the state itself." 445 U.S. at 105, 100 S.Ct. at 943 (quoting *City of Lafayette,* 435 U.S. at 410, 98 S.Ct. at 1135). In *Midcal,* a state statute authorized private wine wholesalers to file fair trade contracts or price schedules, and merchants were then required to sell to retailers at the set price. The state retained no direct control over the wine prices. The Court held that under the two-part test, the actions were not entitled to *Parker* immunity.

The Supreme Court has not reached the question of whether a city must meet the active state supervision part of the *Midcal* test. *City of Boulder,* 455 U.S. at 51–52, n. 14, 102 S.Ct. at 840–841, n. 14. The issue has not been presented in this circuit. Other circuits, however, have held that cities need not satisfy the second part of the *Midcal* test to establish *Parker* immunity when they perform a traditional municipal function under a clearly established and affirmatively expressed state policy. This is what Los Angeles did here when it franchised local public transportation utilities and regulated their charges. *Gold Cross Ambulance & Transfer v. City of Kansas City,* 705 F.2d 1005, 1014–15 (8th Cir.1983), petition for cert. filed, 52 U.S.L.W. 3039 (U.S. Aug. 9, 1983) (No. 83–138); *Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983), *petition for cert. filed,* 51 U.S.L.W. 3842 (U.S. May 24, 1983) (No. 82–1832). *See Pueblo Aircraft Service, Inc. v. City of Pueblo,* 679 F.2d 805 (10th Cir. 1982).

We agree with those cases. Regulation of taxicabs is a traditional municipal function which other circuits have held exempt from active supervision. *See generally Grier v. Ferrant,* 62 Cal.App.2d 306, 144 P.2d 631, 635 (1944); 7 McQuillan, *Municipal Corporations* § 24.660 (3d ed. 1978); 9 McQuillan, *Municipal Corporations* § 26.173 (3d ed. 1978). We hold that a city need not prove active state supervision to be entitled to *Parker* immunity when it franchises taxicab companies and regulates taxicab fares within the city.

The state legislature has determined that public transportation by taxicab should be regulated and that preferably the regulation should be handled by local government. A requirement of active state supervision would erode local autonomy. It makes little sense to require a state to invest its limited resources in supervisory functions that are best left to municipalities. As Justice Rehnquist observed, "[i]t would seem rather odd to require municipal ordinances to be enforced by the State rather than the City itself." *Community Communications Co. v. City of Boulder,* 455 U.S. at 71, n. 6, 102 S.Ct. at 851, n. 6 (Rehnquist, J. dissenting).

### Conclusion

The California Constitution and California's statutes show an affirmatively expressed and clearly articulated state policy

to displace competition with regulation in the taxicab industry. The challenged actions of the City were taken pursuant to that policy and were contemplated by the legislature. That is sufficient to immunize the City from antitrust liability under *Parker v. Brown*. The district court did not err in denying Yellow Cab's request for a preliminary injunction and partial summary judgment or in dismissing the antitrust claims against the City of Los Angeles. Accordingly, the judgment of the district court is AFFIRMED.