**TOM HUDSON & ASSOCIATES, INC., and Tom Hudson, Plaintiffs-Appellees,**

v.

**CITY OF CHULA VISTA, SCA Services Inc., and Chula Vista Sanitary Service, Inc., Defendants-Appellants.**

**No. 83–6467.**

United States Court of Appeals, Ninth Circuit.

Submitted May 15, 1984.

Decided Oct. 25, 1984.

As Amended Nov. 5, 1984.

by this Court in an unpublished opinion, *United States v. Hayward*, 603 F.2d 221 (8th Cir.1978).

Robert C. Fellmeth, Hallen D. Rosner, San Diego, Cal., for plaintiffs-appellees.

Thomas J. Harron, Chula Vista, Cal., Patrick Lynch, Thomas Gibbs, O'Melveny & Myers, Los Angeles, Cal., for defendants-appellants.

Timothy H.B. Yaryan, Sacramento, Cal., amicus curiae for Greater Los Angeles Solid Wastes Management Assoc.

Richard K. Turner, Turner & Sullivan, Sacramento, Cal., Z. Harry Astor, Orange, Cal., amicus curiae for Cal. Refuse Removal Council Northern California.

Robert J. Logan, City Atty., San Jose, Cal., amicus curiae for the City of San Jose.

Before ANDERSON, SKOPIL, and POOLE, Circuit Judges.

POOLE, Circuit Judge:

This case presents the issue whether California cities are exempt from federal antitrust scrutiny when granting exclusive trash collection franchises.

## I.

Plaintiffs-appellees are two trash removal companies, Hudson & Associates and G.B. Services, and their individual owners. Defendants-appellants are the City of Chula Vista, California, and Chula Vista Sanitary Services (CVSS), a competing private trash collection firm, which since 1971 has held a contract with the city of Chula Vista to provide all commercial and residential trash collection services within the city limits. This exclusive trash-collection franchise is protected by city ordinance. Chula Vista Municipal Code § 8.24060.

Beginning in late 1981, plaintiffs wrote to officials of Chula Vista seeking to com-

**1372**

pete for contracts to provide trash collection in that city. They received no answer.

Instead, in July, 1982, Chula Vista renewed its exclusive trash collection contract with CVSS for five years. The renewal was made without competitive bidding. In December, 1982, plaintiffs filed the present action, alleging that the exclusive franchise granted to CVSS violates both federal and state antitrust laws. On cross-motions for summary judgment and partial summary judgment, the district court held that the city's actions did not constitute protected state action under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and granted partial summary judgment to plaintiffs. Because the applicability of the state action exemption to the city is a separable and dispositive issue, this court granted permission for interlocutory appeal. 28 U.S.C. § 1292(b). We reverse.

## II.

The effect of federal antitrust laws on local and municipal governments has been of growing concern in light of two relatively recent decisions of the U.S. Supreme Court. *Lafayette v. Louisiana Power & Light Company*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *Community Communications Co., Inc. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

In *Parker v. Brown*, 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943), the Court held that Congress did not intend federal antitrust laws to apply to the acts of States "as sovereigns." More than thirty years later, however, the *Lafayette* and *Boulder* decisions limited the *Parker* state-action doctrine and declared that municipalities, "simply by their status as such," do not share the State's antitrust immunity. In *Lafayette*, the Court held that a city could be sued for alleged antitrust violations committed by its wholly-owned municipal power company. The plurality of the Court in *Lafayette* stated that such municipal conduct is unprotected by *Parker v. Brown* unless the city acts "pursuant to [a]

state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1136. Adopting language from cases that had applied *Parker v. Brown* to actions of state agencies, *see Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the plurality stated that cities and other local governmental entities would be protected by the state's antitrust immunity so long as their conduct was authorized by a "clearly articulated and affirmatively expressed * * * state policy." 435 U.S. at 410, 98 S.Ct. at 1135.

In *Boulder*, a majority of the Court adopted the position of the *Lafayette* plurality: that the municipal acts are exempt from federal antitrust standards only when they are done pursuant to a "clearly articulated and affirmatively expressed" state policy. 455 U.S. at 51, 102 S.Ct. at 840. The Court rejected the City's contention that, as a home rule city under the Colorado constitution with "full right of self-government in both local and municipal affairs," its own regulation of local cable television suppliers was the equivalent to that of the state. 455 U.S. at 53, 102 S.Ct. at 841. Far from demonstrating a clearly articulated and affirmatively expressed state policy, the Court explained, the home rule provision showed only a "position * * of mere *neutrality* respecting the municipal actions challenged as anticompetitive." 455 U.S. at 55, 102 S.Ct. at 842. "Acceptance of such a proposition—that the general grant of power to enact ordinances necessarily implies state authorization to enact specific anticompetitive ordinances—would wholly eviscerate the concepts of 'clear articulation and affirmative expression' that our precedents require." 455 U.S. at 56, 102 S.Ct. at 843.

The foregoing cases, however, did not hold that the challenged municipal conduct need be inescapably mandated by the State. *See Turf Paradise Inc. v. Arizona Downs*, 670 F.2d 813, 823 n. 8 (9th Cir. 1982). Though neutrality is not enough, something less than strict compulsion is necessary to extend immunity to local

government. Rather, to determine that *Parker v. Brown* immunity applies, a court need only find that, "from the authority given a governmental entity to operate in a particular given area, that the legislature contemplated the kind of action complained of." *Lafayette*, 435 U.S. at 415, 98 S.Ct. at 1138 (opinion of Brennan, J.). *See also Boulder*, 455 U.S. at 55, 102 S.Ct. at 842.

■ *Boulder* explicitly left open the issue whether a municipality must also show that its actions were "actively supervised by the State," as had been suggested by the plurality opinion in *Lafayette*. *Lafayette*, 435 U.S. at 410, 98 S.Ct. at 1135; *Boulder*, 455 U.S. at 51, n. 14, 102 S.Ct. at 841, n. 14. Though the Supreme Court has not addressed this question, this court and several other circuits have held that the requirement of "active state supervision" applies only to private persons seeking protection under the *Parker v. Brown* doctrine. *See, e.g., California Liquor Dealers v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). Municipalities, however, need make no showing of supervision by the State in suits challenging "traditional municipal functions." *Golden State Transit Corp. v. City of Los Angeles*, 726 F.2d 1430, 1434 (9th Cir.1984); *Town of Hallie v. City of Eau Claire*, 700 F.2d 376, 383–84 (7th Cir.1983) *cert. granted*, —— U.S. ——, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984); *Gold Cross Ambulance & Tran. v. City of Kansas City*, 705 F.2d 1005, 1014 (8th Cir.1983).

Thus, to qualify for *Parker v. Brown* immunity, a city need only show that it is acting pursuant to a clearly articulated and affirmatively expressed state policy to displace competition, and that the legislature contemplated that that policy might be implemented by the kind of actions challenged as anticompetitive. *Golden State Transit Corp. v. City of Los Angeles*, 726 F.2d 1430, 1433 (9th Cir.1984) (Los Angeles taxicab regulation found to be supported by "clearly articulated and affirmatively expressed state policy").

## III.

■ The present case poses no close questions of legislative intent. The State of California has plainly established a "clearly articulated and affirmatively expressed" policy that supports Chula Vista's grant of an exclusive trash hauling contract to CVSS. In particular, section 66757 of the California Government Code explicitly authorizes the very actions taken by Chula Vista. It states:

> Notwithstanding any other provisions of law, each * * * city * * * may determine * * * (b) whether [solid waste handling] services are to be provided by means of non-exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or, if in the opinion of its governing body, the public health, safety, and well-being so require, *by partially or wholly exclusive franchise, contract, license, permit, or otherwise either with or without competitive bidding.* (emphasis added).

The California Legislature unquestionably "contemplated" the measures adopted by Chula Vista.

■ Despite this statute's specificity, appellants seek to analogize it to the broad home rule provision at issue in *Boulder*. Appellees argue that § 66757 falls short of the standards required by *Lafayette* and *Boulder* because it fails to describe the particular regulatory procedure that municipalities must adopt if they choose to displace competition in the trash removal market. Because of this failure, appellees contend, § 66757 simply abdicates state policymaking responsibility to local governments in the manner forbidden by the *Boulder* decision.

We disagree with appellees' interpretation of *Boulder*. Federal antitrust laws do not require that state legislatures define the options available to municipalities with greater specificity than is displayed by § 66757. The Supreme Court's holding in *Boulder* is not so rigid. The "general grant of authority to enact ordinances" in *Boulder* was held insufficient to provide *Parker v. Brown* immunity because it did

not show "an affirmative addressing of the subject [of cable television regulation] by the State." *Boulder*, 455 U.S. at 55, 102 S.Ct. at 842. By contrast, the California Legislature has affirmatively addressed the subject of local trash collection and has specifically authorized municipalities to grant exclusive trash collection franchises, without competitive bidding, as Chula Vista has done. The legislature undeniably contemplated that municipalities would grant such franchises, and it approved their doing so.

### IV.

■ Appellees further argue that Chula Vista's supervision of CVSS's rates has been inadequate and that the city has, in effect, relegated uncontrolled monopoly power to CVSS, a private company. The actions of a private person are not exempt from federal antitrust laws under *Parker v. Brown* unless actively supervised by the State. *California Liquor Dealers v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). Appellees claim that no such supervision of CVSS was provided. We disagree.

In *Midcal*, the Court held that a resale price maintenance scheme did not constitute protected state action where resale prices were filed with, but not reviewed by, a state agency. The Court stated:

The State neither establishes prices nor reviews the reasonableness of the price schedules; nor does it regulate the terms of fair trade contracts. The State does not monitor market conditions or engage in "pointed reexamination" of the program.

445 U.S. at 105–106, 100 S.Ct. at 943. *See also Cantor v. Detroit Edison Co.* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) (antitrust immunity not conferred on conduct simply because it was incorporated in tariffs filed with public utilities commission).

■ Here, by contrast, Chula Vista does not passively accept the rate proposals submitted by CVSS. All rate proposals are reviewed by the city finance department and must be approved by vote of the City Council. Unlike the situation in *Midcal*, the City of Chula Vista does review the reasonableness of CVSS's rates, and the rates in effect are directly attributable to action of the city, not mere "acquiesce[nce] in an anticompetitive policy adopted on a private party's initiative." *Benson v. Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 275 n. 5 (9th Cir.1982). *See also Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 825 (9th Cir.1982) (selection of race dates by private contract is state action if subject to thorough investigation by State Racing Commission).

■ Appellee contends that the review conducted by the city is less intensive than required in a number of public utility rate-making cases. *See, e.g., Permian Basin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *Driscoll v. Edison Light & Power Co.*, 307 U.S. 104, 59 S.Ct. 715, 83 L.Ed.2d 1134 (1939). We find this analogy to be unhelpful. The particular statutory schemes dealt with in those cases are, of course, not at issue here. Nor do we believe that the Sherman Act requires cities to treat all city contractors as public utilities. For purposes of *Parker v. Brown* antitrust immunity, the city need only show that it "pointedly reexamines" the proposals submitted by the private party. That requirement has been met here.

### V.

The exclusive franchise system for trash collection and removal in this case was instituted in accordance with a clearly articulated and affirmatively expressed state policy, specifically authorizing the displacement of competition and contemplating the adoption of the conduct challenged here as anticompetitive. To the extent that monopoly powers have been granted to private persons, they are actively supervised by municipal officials. Chula Vista's trash collection franchise is immune from antitrust scrutiny under the doctrine of *Parker*

*v. Brown,* and the district court's order denying immunity is therefore RE-VERSED.