NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GREEN SOLUTIONS RECYCLING, LLC, | No. 19-15201 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-00334-MMD-CBC |
| v. | |
| RENO DISPOSAL COMPANY, INC., et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Submitted May 14, 2020**
San Francisco, California

Before: FRIEDLAND and BENNETT, Circuit Judges, and RAKOFF,*** District Judge.

Nevada law allows municipalities to "displace or limit competition" by

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

"[g]rant[ing] an exclusive franchise" to a private party for the "[c]ollection and disposal of garbage and other waste." Nev. Rev. Stat. §§ 268.081, 268.083. Exercising that authority, the City of Reno (the "City") entered into an agreement (the "Franchise Agreement") with Reno Disposal Company, Inc. ("Reno Disposal") that granted Reno Disposal the exclusive right to collect both solid waste and many recyclable materials from businesses in the City. Green Solutions Recycling, LLC ("GSR") then began competing with Reno Disposal for recycling collection business in the City. The City and Reno Disposal concluded that GSR was violating the Franchise Agreement by collecting recyclable materials for a fee. The City informed GSR that GSR's collection of recyclable materials covered by the Franchise Agreement could result in "code enforcement issues," and Reno Disposal's counsel sent letters to GSR's customers telling them they could be fined for violating the Franchise Agreement.

GSR filed this action against both the City and Reno Disposal, alleging, as relevant here, that the City and Reno Disposal had restrained trade in the market for recyclable materials, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The district court entered summary judgment on that claim in favor of the City and Reno Disposal based on the doctrine of state-action antitrust immunity, as articulated in *Parker v. Brown*, 317 U.S. 341 (1943), and its progeny. Reviewing GSR's appeal de novo, we affirm.

**1.** State-action antitrust "immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013) (quoting *Cmty. Commc'ns Co. v. Boulder*, 455 U.S. 40, 52 (1982)). There are, in turn, two elements to whether a local government's challenged activities satisfy this clear-articulation requirement: (a) "whether the [state] legislature authorized the challenged actions of the [local government]"; and (b) "whether the legislature intended to displace competition with regulation." *Traweek v. City & County of San Francisco*, 920 F.2d 589, 591-92, 591 n.1 (9th Cir. 1990); *see also Phoebe Putney*, 568 U.S. at 228 (explaining that there must be "state-law authority to act" and the local government "must also show that it has been delegated authority to act or regulate anticompetitively"). We hold that the market restraint that GSR challenges in this case was imposed by the City pursuant to a clearly articulated and affirmatively expressed Nevada policy.

*First*, the City had state-law authority to act as it did. The statutory term "other waste," Nev. Rev. Stat. § 268.081(3), is broad enough that it at least arguably encompasses the recyclable materials covered by the Franchise Agreement—in relevant part, those recyclables "collected and transported as a service," but not those "sold by the generator thereof directly to a buyer of

recyclable material at market price." Reno, Nev. Admin. Code § 5.90.010. The Nevada legislature delegated some discretion to the City to decide what might be included in an exclusive contract as "other waste." Either the City did not err at all in its exercise of that discretion, or it made the type of "[o]rdinary error[]" that "should be left for state tribunals to control" rather than being corrected through federal antitrust litigation. *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 891 (9th Cir. 1988) (quotation marks omitted) (quoting *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985)); *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 372 (1991) ("[I]n order to prevent *Parker* from undermining the very interests of federalism it is designed to protect, it is necessary to adopt a concept of authority broader than what is applied to determine the legality of the municipality's action under state law."). Particularly given ongoing proceedings in state court in which the parties to this case are litigating related issues about the proper interpretation of "other waste" under state law, we emphasize that we need not and do not definitively resolve whether the Franchise Agreement improperly extends to the collection and disposal of any materials that are not in fact "other waste" under state law.

*Second*, the Nevada legislature plainly intended to displace competition with regulation when it authorized municipalities to "displace or limit competition," Nev. Rev. Stat. § 268.081, by granting an exclusive franchise for the collection and

4

disposal of waste. *See Tom Hudson & Assocs., Inc. v. City of Chula Vista*, 746 F.2d 1370, 1373-74 (9th Cir. 1984) (reasoning that a legislature had "unquestionably contemplated" that a municipality could grant an exclusive trash hauling contract and displace competition when the legislature authorized cities to provide for solid waste handling through a partially or wholly exclusive franchise (quotation marks omitted)).

   **2.**  The "active supervision" requirement, which private parties must satisfy to be shielded by state-action antitrust immunity, does not apply to the City. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985) ("[A]ctive state supervision is not a prerequisite to exemption from the antitrust laws where the actor is a municipality rather than a private party."). The fact that GSR's antitrust claim challenges actions taken by Reno Disposal in concert with the City does not trigger the "active supervision" requirement for the City. GSR's antitrust claim essentially challenges "nothing more than an agreement" by the City to "impose" a particular definition of waste through the Franchise Agreement and the corresponding provisions of the Reno Administrative Code. *Omni*, 499 U.S. at 374-75 (rejecting a "conspiracy exception" to state-action antitrust immunity). Although Reno Disposal was also a party to that agreement and helped implement its terms, this is not a case in which "the anticompetitive restraint turns on the discretion of private actors." *Chamber of Commerce of the U.S. v. City of Seattle*,

890 F.3d 769, 788-89, 789 n.16 (9th Cir. 2018).

**3.** The City's immunity from GSR's antitrust claim, which follows from the foregoing conclusions, also entitles Reno Disposal to *Parker* immunity. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 878 (9th Cir. 1987) (holding that where a state actor is immune from a claim that it improperly granted an exclusive franchise, a private party "cannot be held liable for possessing that monopoly").

**AFFIRMED.**