James L. Dowsey, Jr., J.
This is a joint appeal from judgments of conviction rendered by the Police Justice Court of the Incorporated Village of Hempstead on four separate charges of *216 violations of the taxicab and drivers’ regulations contained in the ordinances of that village. Defendant, Ethridge, was convicted after trial of violation of section 346 (driving-unlicensed cab) and subdivision 2 of section 355 (allowing passenger to ride on front seat) of the Village Ordinances. He was fined $50 for the violation of section 346 and sentence was suspended on the violation of subdivision 2 of section 355. The fine was paid. Defendant, Marston, was charged with violations of sections 346 and 351 (driving cab without village hack driver’s license) of the Village Ordinances and' was convicted on both charges. He was fined $50 on the violation of section 351 and sentence was suspended on the violation of section 346 and the fine was paid. Defendant, Ethridge, has not pressed on this appeal his conviction for a violation of section 355 of the Village Ordinances (allowing passenger to ride on front seat). The evidence of guilt being clear, his conviction for a violation of section 355 is affirmed.
The uncontradicted testimony establishes that defendant, Marston, was the owner and operator of a taxi company known as Uniondale Taxi, Inc., with its main office for business located in the unincorporated area of Uniondale, the cabs of which were licensed by the Township of Hempstead but not by the Village of Hempstead. Charles F. Marston was not licensed as a taxi driver by the Village of Hempstead (§ 351), although he was licensed by the Town of Hempstead wherein Uniondale is located. Robert A. Ethridge, on the other band, is licensed by both the Township and Village of Hempstead, but the cab which he was operating in the village on the date of the violation was not licensed by the Village of Hempstead (§ 346), although it was licensed by the Town of Hempstead.
Each of the other convictions presented on this appeal— operating an unlicensed cab and driving- a cab within the Village of Hempstead without a hack driver’s license issued by the village — must be reversed. Villages derive their power to regulate cabs from the provisions of subdivision 1 of section 91 of the Village Law, which reads in pertinent part as follows: ‘ ‘ The board of trustees of a village may, by ordinance, prohibit the pursuit or exercise without a license of any of the following-trades or occupations within the village, to wit: The running of public carriages, cabs, hacks, carts, drays, express wagons, automobiles or other vehicles for the transportation of persons or property over or upon the streets of a village for hire, soliciting- either on private property or on the public highway, or running therefor
*217 Clearly, two elements are necessary in village ordinances sought to be enforced pursuant thereto, i.e., running on the streets of the village for hire and soliciting.
Section 346 of the Village Ordinances entitled “ Taxicab License, Application for ” enacted pursuant to the enabling statute as above quoted reads in pertinent part: “ No taxicab shall ply for hire upon the streets of the village without first obtaining an annual license as hereinafter provided.”
The information charging a violation of section 346 as against defendant, Ethridge, charges that the defendant did “ operate and drive a taxicab, to wit: a 1959-Ford sedan bearing number plates 029-995 N. Y. on Lawson Street in the village of Hemp-stead, Nassau County, New York, carrying a passenger for hire while said taxicab was not duly licensed by the Incorporated Village of Hempstead as a taxicab, plying for hire or carrying passengers for hire as required by said ordinance.” A similar information was filed against defendant, Marston, for his actions on another street in the village. It is noted that at no place in either information is it charged that the defendants plied for hire upon the streets of the village (Hempstead Village Ordinances, § 346). Section 345 of the Hempstead Village Ordinances entitled “ Definitions ” reads in its pertinent part: “ Unless otherwise expressly stated, 1 Taxicab, ’ whenever used in this Article, shall be deemed to mean a public taxicab, cab, hack, or other vehicle plying for hire or carrying passengers for hire within the Incorporated Village of Hempstead, whether or not a taximeter is affixed or used. Any taxicab that uses the streets of the Village for the purpose of carrying passengers for hire shall be deemed a public taxicab and must be licensed under this Article.” Examination of this licensing provision and other provisions of section 345 of the Village Ordinances shows that that section is more than merely definitive. The plain language of the village ordnance requires a license on vehicles using the streets of the village solely for the purpose of carrying passengers for hire without regard to whether they are plying for hire. An examination of the information (charging a violation of section 346) indicates that the violation sought to be charged is that of section 345. The enabling statute (Village Law, § 91, subd. 1), however, does not empower a village to require licenses for taxicabs using the streets of the village for the purpose of carrying passengers for hire unless said taxicabs are soliciting business upon the streets of the village or upon private property as well as carrying passengers for hire.
*218 The minutes of the trials of each defendant reveal that in each case a police officer of the Incorporated Village of Hemp-stead called a telephone number listed on a timetable of the Long Island Bail Boad advertising service by another cab company other than Uniondale Taxi, Inc., and that a cab from the Uniondale Taxi, Inc., came from a point outside the village in response to a call to a point within the village. It is the contention of the defendants that in neither instance were they soliciting or plying for hire on the streets of the village but, rather, that they had come in response to a call to give their services to a particular passenger and that while passing through the village they were not holding themselves out for hire to the general public. Plying for hire is synonymous with solicitation (People v. Milne, 86 Misc. 417) and it does not apply to the activities of these defendants.
In People v. Milne (supra) the court was interpreting an ordinance of the City of New York which regulated taxicabs within its boundaries pursuant to the provisions of section 436-2.0 of the Administrative Code of the City of New York. The provisions of that statute are similar to the Hempstead Taxicab Ordinance. It has frequently been held that a vehicle not plying for hire, but rather operating solely in response to previous engagements, need not be licensed (People v. Sullivan, 199 Misc. 524, affd. 303 N. Y. 757; Yellow Taxicab Co. v. Gaynor, 82 Misc. 94, affd. 159 App. Div. 893; People v. Cuneen, 94 Misc. 509; People v. Milne, supra). However, regardless of the apparent purpose to which the vehicle is put, if it actually is used as a taxicab and is soliciting business, a license can be required (People v. Reser, 297 N. Y. 922). The enabling statute (Village Law, § 91, subd. 1) for the Hempstead ordinance requires two elements to be present, namely running on the streets for hire and solicitation. Insofar as section 345 of the Ordinances of the Village of Hempstead requires a license for taxicabs running on the streets for hire without the requirement of plying for trade, it is invalid.
On the trials of the actions, the People attempted to show solicitation by means of an advertisement in a Long Island Bail Boad schedule for a company known as Community Taxi at a Village of Hempstead address. The cabs of Uniondale Taxi, Inc., appeared in response to calls to the telephone numbers listed in the Community Taxi advertisement. No attempt was made to show the relationship, if any, between Community Taxi and Uniondale Taxi, Inc. The only similarity was the telephone numbers which could have been acquired by Uniondale Taxi, Inc., after the date of the placing of the advertisement. *219 Clearly, the advertisement was irrelevant, should not have been received into evidence, and was not binding upon the defendants (People v. Nitzberg, 287 N. Y. 183, 187). Such an advertisement, standing alone, would be insufficient to establish a prima facie case of solicitation.