Francis J. Bloustein, J.
This is an action brought by an owner-driver -of a taxicab licensed by the City of New York, in his own behalf and -on behalf -of all other licensed taxicab owners and drivers similarly situated, against the Chairman of the New York City Taxi and Limousine Commission (hereinafter, “ Commission ”) for a judgment declaring certain amended rules adopted by the Commission, effective July 5, 1972, to be invalid, and enjoining their enforcement. Plaintiff has moved for a preliminary injunction to restrain the enforcement of such amended rules.
The Commission was created by Local Law No. 12 (Local Laws, 1971, No. 12 -of City of New York) which added a new chapter 65 to the City Charter and a new chapter 65 to the Administrative Code of the City of New York. The Commission was thereby vested with jurisdiction to regulate and supervise the business and industry of transportation of persons by licensed vehicles for hire in the city ’ ’, including standards and conditions of service and the rates -of fare to be charged and collected, as well as to promulgate rules and regulations to carry out the purposes- and provisions of the said chapter (New York City Charter, ch. 65, § 2303).
The amended rules here challenged relate to the transportation of passengers by taxicab from New York City to certain destinations outside the city; namely, Westchester and Nassau Counties and the facilities of the Port of New York Authority at Newark Airport in Newark, New Jersey. Prior to the adoption of the amended rules, a cab driver was not required to transport any passengers from the City of New York to any destina *685 tion outside the city, but he was permitted to render that service at his option and could demand whatever rate he chose to charge, even though it was in excess of the rates prescribed for taxicab service within the city (see Administrative Code, § 2307, subd. a, par. 3).
Under the amended rules, on the other hand, any cab driver who is on duty is prohibited from refusing a call to Westchester or Nassau County or to Newark Airport unless he has been working for eight hours and can find another cab to take the call, and the rates to be charged for such a trip are fixed at twice the standard meter rate plus all bridge, tunnel and ferry tolls to and from destination (rules 42 and -68 of the Rules Governing Drivers of Public Taxicabs and Public Coaches, as amended effective July 5, 1972). The rates recorded on the taxi meter are those fixed by Local Law No. 12 of the Local Laws of 1971 (New York City Charter, § 2304, subd. a) for taxicab service within the city, and the purpose of charging twice the rate recorded on the meter is to provide compensation for the return trip. The passenger must be informed of the rates to be charged before the start of the trip (rule 68[f] [1]).
Plaintiff attacks the amended rules as an arbitrary and unreasonable interference with the operation -of the taxicab industry in this city; as an invalid attempt by the Commission to exercise extraterritorial jurisdiction in disregard for the limitations imposed by -State and local law, as impinging on the jurisdiction of the Interstate Commerce Commission insofar as such rules apply to trips between New York and New Jersey; and as violative of the charter provisions requiring a public hearing as a prerequisite to any determination by the Commission changing the rates of fare.
Plaintiff, however, has not established a clear right to the relief demanded by -him, on the foregoing grounds or otherwise, and his motion for a preliminary injunction must therefore- be denied (Meda Int. v. Salzman, 24 A D 2d 710, 711; Park Terrace Caterers v. McDonough, 9 A D 2d 113,114).
There is no substance to plaintiff’s attack on the reasonableness of the amended rules. The taxicab industry in New York City is unquestionably one “ affected with a public interest ”, as the city’s Administrative Code (Administrative Code, eh. 65, § 2301) -specifically declares, and it may properly be regulated in the public interest. One of the prime functions vested in the Commission by Local Law No. 12 is that of improving taxi service to the public of the city, and the amended rules are manifestly designed to further that purpose. It appears that the *686 amendments were adopted in response to complaints of various abuses by cab drivers, including the charging of exorbitant rates, in connection with trips to points beyond the city limits, and the amended rules appear to be a fair and reasonable means of meeting that problem, with due regard to the rights and interests of the cab drivers as well as of those of the riding public.
Plaintiff objects that there has been no official documentation of the purported reasons for the adoption of the new rules. The authorities make it clear, however, that the amended rules carry u a strong presumption of constitutionality including a rebut-table presumption of the existence of necessary factual support for * * * [their] provisions ”, and that there is no warrant for judicial interference so long as such rules are justified by “ any state of facts, known or to be assumed ”, (See Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540-541; Noyes v. Erie & Wyoming Farmers Co-op. Corp., 281 N. Y. 187, 195.) Plaintiff has certainly not made any showing sufficient to overcome the presumptive constitutionality of the challenged rules.
Nor is it fatal to the validity of the amended rules that they undertake to regulate transportation which, though originating within the city, extends to areas beyond the city limits. Since the dominant purpose of such rules is the regulation and improvement of the transportation service rendered to the public of New York City by an industry which enjoys certain exclusive privileges granted to it by the city in the area of public transportation, the validity of such rules is not affected by the mere fact that they may incidentally embrace activities beyond the city limits. There are thus other areas of the law where it is held that a municipality ‘ ‘ may exercise its police power extra-territorially ’ ’ to protect a dominant local interest of such municipality (see City of Poughkeepsie v. Vassar Coll., 35 Misc 2d 604, 606).
There is nothing in any of the provisions of State or local law cited by plaintiff which would operate to invalidate the regulation of transportation extending beyond the city limits. Plaintiff cites section 181 of the General Municipal Law, which authorizes the various municipalities in this State to regulate the registration and licensing of taxicabs. However, there is nothing in that statute which would rule out local regulation of the operations of taxicabs licensed by a particular municipality, merely because such regulation incidentally embraces activities extending beyond the municipality’s geographical borders.
Nor can section 2303 of the .'City Charter, which confers on the Commission its basic jurisdiction, be read — as plaintiff urges — *687 as applying only to the regulation of taxicab transportation ‘ ‘ in the city”. That section empowers the Commission to regulate and supervise “the business and industry of transportation of persons by licensed vehicles for hire in the city ”, and it is clear that the words “ in the city ” are intended to qualify only the words “ for hire ” (emphasis supplied). That the power thus conferred was not intended to he confined to taxicab operations within the city limits, is confirmed by section 2320 of the Administrative Code, which directs the Commission to institute a program for a central dispatch system at all air terminals within the city ‘ to provide service to any and all points in the five-boroughs, and in such other locations as from time to time the. commission shall deem necessary ” (emphasis supplied). Thus, it was clearly contemplated that the Commission would have the power to regulate taxicab activities extending beyond “ the five boroughs ” of the city.
There is likewise no -merit to plaintiff’s contention that the amended rules impinge on the authority of the Interstate Commerce Commission so far as such rules apply to transportation between New York City and Newark, New Jersey. Thus, there is an express exemption in the Interstate Commerce Act, with certain exceptions not here pertinent, as respects the operation of taxicabs (U. S. Code, tit. 49, § 303, subd. [b], par. [2]). See, also, Buck v. California (343 U. S. 99, 102-103), where the United States Supreme Court held that incidental regulation by a municipality -of taxicabs traversing the local area in the course of interstate or foreign transportation is not violative of the Commerce Clause of the Federal Constitution so long as there is no attempt to burden or discriminate against interstate or foreign commerce.
There likewise seems to be no substance to plaintiff’s contention that a public hearing was required as a prerequisite to the adoption -of the amended rules. Plaintiff relies on section 2304 of the City Charter, which fixes the rates chargeable “ for the hire of a taxicab for one or more passengers within the city of New York ’ ’ and which further provides that “No determination by the commission changing the rates of fare shall be made except after a public hearing before the commission, at which evidence shall be taken.”
However, ,the evident purpose of such provisions was to require a public hearing only if a change were sought in the rates thus fixed in the charter, which had themselves been adopted after a public hearing, and actually the amended rules in no way depart from the basic rates fixed in the charter. The driver *688 who takes a passenger to one of the specified out-of-city destinations, is thus compensated on the basis of the prescribed charter rates, as recorded on the taxi meter, but he is entitled to receive twice those rates, in addition to reimbursement for tolls, in order to compensate him for the return trip. Further, since the charter itself provides that the rates fixed therein shall not apply to “ a trip beyond the city limits ” (§ 2307, subd. a, par. 3), it would seem to follow that the charter restrictions with respect to changes in such rates are likewise inapplicable to changes made in the fares chargeable for such “ a trip beyond the city limits
Plaintiff further complains that the amended rules here involved do not provide for reimbursement to the driver of highway tolls that the driver would be required to pay on a trip to Westchester or Newark. It appears, however, that rule 68 (f) (2) has since been further .amended to provide for the reimbursement to the driver of all tolls to and from destination, including highway tolls.
Plaintiff’s motion for a preliminary injunction is accordingly denied.