OPINION OF THE COURT
Jay Cotler, J.
Defendants herein are charged with violating subdivision b of section 2306 (unlicensed limousine) and subdivision d of section 2306 (unlicensed limousine driver) of the Administrative Code of the City , of New York. Both defendants move for dismissal pursuant to CPL 170.30. These motions have been consolidated for the purpose of decision as they involve the same issues of law on similar facts.
FACTS
Defendant Eugene Moore is employed by the Hempstead Limousine Service, Inc., whose main place of business is located in Nassau County. On June 18, 1982, defendant Moore was told to pick up a passenger in Nassau County and to transport that passenger to the Hilton Hotel in New York City. After dropping the passenger off in Manhattan, Moore was served with two summonses by an inspector of the New York City Taxi and Limousine Commission. (Hereafter called the Commission.) The summonses charged Moore with violating subdivision b of section 2306 (unlicensed limousine) and subdivision d of section 2306 (unlicensed limousine driver) of the Administrative Code of the City of New York.
*576 Defendant Gerald Lopez is employed by Edward’s Limousine Service, whose main place of business is in Nassau County. On March 22, 1982, defendant Lopez was dispatched in one of his employer’s vehicles to pick up a passenger at the Plaza Hotel in New York City. While waiting for the passenger outside the hotel, Mr. Lopez was served with two summonses by an inspector of the Commission charging violation of the following two sections of the Administrative Code.
Section 2306, “b. Any person who shall permit another to operate or who shall knowingly operate or offer to operate for hire any vehicle as a taxicab, coach, limousine or wheelchair accessible van in the city, without first having obtained an appropriate license therefor, shall be guilty of a violation hereof, and upon conviction in the criminal court shall be punished by a fine of not less than two hundred dollars or more than five hundred dollars or imprisonment for not more than sixty days, or both such fine and imprisonment.”
Section 2306, “d. Any person, not having been duly licensed hereunder as a driver or whose driver’s license has been revoked or suspended, and who during the time of such revocation or suspension drives or operates for hire a licensed vehicle in the city, shall be guilty of a violation hereof, and upon conviction in the criminal court, shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars or imprisonment for a term not exceeding thirty days, or both.”
Both defendants are drivers for limousine services that are based in Nassau County. These companies advertise in the Manhattan telephone book. Passengers desiring to use the services of these companies call their offices in Nassau County to make arrangements. Drivers are then sent in vehicles owned by the companies to pick up passengers in various locations including New York City, Nassau and Suffolk Counties, and the metropolitan area airports. The drivers do not accept hails from the street. The drivers and vehicles are licensed by Nassau County but are not licensed by the Commission.
*577 ISSUE
In the case before us we have limousine companies which are based outside the geographic jurisdiction of New York City. It is undisputed that the drivers and vehicles of these companies pick up and deliver passengers within the boundaries of New York City. It is also undisputed that these vehicles and drivers are not licensed by the Commission. Drawing the issue as narrowly as possible, the question put to this court is, can the Commission require, on threat of criminal sanction, that limousine vehicles and drivers from beyond the boundaries of New York City be licensed by the Commission prior to entering the city.
It is important to note that this decision limits itself only to the licensing requirement and does not reach the question of the Commission’s jurisdiction over safety, equipment or rule of the road violations by such out-of-town vehicles and drivers.
CONCLUSIONS OF LAW
Subdivision 13 of section 20 of the General City Law empowers the city to regulate and license occupations and businesses for the following reasons, “To maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto”.
Under this grant of power from the State, New York City adopted chapter 65 of the Administrative Code of the City of New York. The city “[Fjound that the business of transporting passengers for hire by motor vehicle in the city of New York is affected with a public interest * * * and must therefore be supervised, regulated and controlled by the city.” (Administrative Code, § 2301.)
The licensing provisions of subdivisions b and d of section 2306 are part of the city plan for regulation of vehicles for hire in the city. The defendants contend that these licensing provisions do not apply to them. The defendants claim they have no place of business within the territorial jurisdiction of New York City. The defendants point out that they enter the city only in response to a client’s phone call to their office which is outside New York City and, *578 consequently, they are not vehicles for hire within the city and do not fall under the jurisdiction of the Commission.
The city, on the other hand, argues that the defendants advertise in the New York City telephone book and are therefore soliciting business in the city. Under the view of the city a company which responds positively to a solicitation to a telephone company representative’s request to place an advertisement in the yellow pages thereby subjects itself to possible criminal sanctions for failure to comply with all city regulation.
This court is not convinced that the placing of an advertisement in the yellow pages and the occasional dropping off or picking up of a passenger is sufficient to place these non-New York City defendants within the Commission’s licensing jurisdiction. (People v Ethridge, 29 Misc 2d 215, 219.)
The defendants also argue that these licensing provisions are a burden on interstate commerce and are therefore invalid as applied to them under the United States Constitution, specifically the commerce clause (US Const, art I, § 8, cl 3). The city argues that it can regulate certain local aspects of interstate commerce. As much as courts and lawyers may enjoy constitutional issues, we are still bound to decide cases on the facts before us. The facts before this court at this time are void of any issues which could properly be decided under the commerce clause of the United States Constitution.
The above is not to say that this case is void of important constitutional questions. One could argue that these licensing provisions infringe upon the right to travel of the people who are served by the defendants and who live outside New York City. (Shapiro v Thompson, 394 US 618.) However, since neither side briefed this point it does not seem to be a proper basis for decision, especially in light of the nonconstitutional alternatives presented to the court.
This may be a good point to recall that we are dealing with two defendants, one who dropped off a passenger and one who picked up a passenger within the city limits. The city has no objection to the dismissal of the case against the *579 driver who came into the city without a license to drop someone off but objects vigorously to the dismissal of a defendant who came into the city without a license to pick someone up. If these licensing requirements are in fact part of an over-all scheme to “preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto” (General City Law, § 20, subd 13), then the logic of the city’s position escapes this court. However, if these licensing provisions are being enforced as a revenue producing measure or a method of protecting an indigenous taxi and limousine industry, then the city’s position seems more rational, but not necessarily more proper.
To this court’s point of view, operating a vehicle for hire with a passenger inside involves the same duties and obligations regardless of the direction you are traveling. It is illogical to say that it is permissible for an unlicensed out-of-town limousine driver to carry a passenger in one direction through the Midtown Tunnel, but that this same driver may be threatened with going to jail for carrying a passenger through the Midtown Tunnel in the opposite direction. The city’s requirement of “dead heading” (returning empty) may be a waste of resources, both human and environmental, that we can no longer afford.
Finally, it is clear from the facts that these defendants were passing through the city on the way to deliver or pick up a passenger who had made a previous engagement with their employers. “It has frequently been held that a vehicle not plying for hire, but rather operating solely in response to previous engagements, need not be licensed” (People v Ethridge, supra, p 218; People v Chimino, 39 Misc 2d 555.)*
In conclusion, this court finds that it would be unjust and improper to require out-of-town limousine operators to comply with the licensing provisions of subdivisions b and d of section 2306 of the New York City Administrative Code.
*580 Based on the foregoing, the defendants’ motions to dismiss are granted.

 BostonPrivate CarCorp. v City of New York (NYLJ, Oct. 16,1975, p 8, col 1), is not controlling as in that case it appears that the limousine company was based within New York City.