OPINION OF THE COURT
Thomas F. Liotti, J.
The defendant in the case at bar has been charged with violating section 40-7 of the Village Code of the Village of Westbury (Village Code) known as the "Taxicab Law”. The law states:
"A. No person shall operate or permit to be operated any vehicle as a taxicab on any street, highway or public place located within the village without first having obtained and having then in force, a village owner’s license therefor, issued as herein provided. The fact that a vehicle is being operated as a taxicab shall be presumptive evidence that such operation is with the permission of the owner of the vehicle.
"B. No person shall drive a taxicab and no owner shall permit another person to drive a taxicab owned by or under the control of such person on any street, highway or public place located within the village without such driver’s first having obtained and having then in force and conspicuously displayed within such vehicle a village driver’s license, issued as herein provided.
"C. It shall be unlawful for any person to operate a taxicab on any street, highway or public place located within the village unless such person shall have been duly licensed as a *1047 taxicab owner, as herein provided.” (Village Code of Village of Westbury § 40-7.)
The Code defines “operate” as: “The picking up and conveyance by taxicab of a passenger for hire within the village, whether such passenger is discharged at a destination within or outside the village. Nothing in this chapter shall apply to, abridge, limit or regulate the right of any person not licensed hereunder to convey passengers by taxicab from points of origin outside the village to points of destination within the village or through the village.” (Village Code of Village of Westbury § 40-2.)
On April 7, 1994, the defendant brought an order to show cause which was in the nature of a dismissal application pending before the court. On April 7, 1994, the attorney for the defendant argued that a temporary restraining order should be granted, enjoining the Nassau County Police Department from enforcing the Village Taxicab Law against the defendant.
All Seasons Taxicab Company employs all the named defendants in the instant action. All Seasons has 16 cabs and 20 full- and part-time drivers. The defendant has received a total of 17 summonses and at least one of his drivers was arrested and taken away in handcuffs.
The defendant’s attorney stated that they had applied for four licenses. He also stated that the applications had already been authorized by the Board of Trustees on November 12, 1993. However, on February 17, 1994 the Taxi Commission denied the defendant’s license applications.
In March 1994, one of the defendant’s drivers was arrested, placed in handcuffs and brought to the Third Precinct. His vehicle was impounded on the basis that he lacked a taxi license. The defendant claims that the Village is persecuting his drivers and he cannot secure drivers because they fear being arrested.
The attorney for the defendant claims that the local Taxicab Law is an unreasonable exercise of the Village’s police powers. The defendant challenges the constitutionality of the Taxicab Law, stating that it is an unreasonable interference with interstate commerce because the Village Code requires a license for the mere picking up of passengers within the Village, regardless of the passenger’s destination. In essence, the defendant claims that the Village Code restricts persons from going through the Village. The result is an unconstitu *1048 tional restraint of trade or business. The attorney for the defendant cited the Commerce Clause by arguing that no State or municipality can make laws to regulate interstate commerce.
The defendant challenges the local law, because he argues that the Village is attempting to regulate taxis outside of its boundaries. The attorney for the defendant correctly states that the Village requires the entire world to be licensed in order to pick up customers within the Village of Westbury. However, the defendant admits that there can be no question regarding the power of the municipality to regulate the operation of taxicabs within its boundaries.
The Village of Westbury is authorized to pass a regulation that regulates taxicabs. General Municipal Law § 181, "Ordinances to regulate taxicabs and limousines”, states that:
"The municipal officers and boards in the several cities, towns and villages of this state now having the authority to enact ordinances, may adopt ordinances regulating:
"1. The registration and licensing of taxicabs and may limit the number of taxicabs to be licensed and the county of Westchester may adopt ordinances regulating the registration and licensing of taxicabs and limousines and may limit the number to be licensed.
"2. Parking and passenger pick-up and discharge by taxicabs, limousines and livery vehicles. Establishment of such ordinances and regulations regulating parking and passenger pick-up and discharges may be based upon recommendations from municipal planning officials or other public entities and may address and take into consideration such factors, including, but not limited to, geographic areas, vehicle type, limiting the number of parked vehicles and activities undertaken while parked, and periods of idling.”
There can be no question that the Village is authorized to regulate the taxicab industry within its borders. Municipalities may regulate and control traffic. Unless its acts are arbitrary and capricious, courts will not interfere. (Aero Drive-In v Town of Cheektowaga, 140 AD2d 932 [4th Dept 1988].) There is a strong public interest in regulating taxicabs, which includes preventing congestion on the streets, insuring traffic safety, providing its citizens with safe and reasonably priced service and preventing unsafe driving and insuring that competent people are servicing its citizens. (See, Matter of Howell v Benson, 90 AD2d 903 [3d Dept 1982]; Vecchio v Griffin, 143 AD2d 1003 [2d Dept 1988].)
*1049 A village may pass an ordinance as long as it is reasonably related to a legitimate municipal purpose. (Vecchio v Griffin, supra, at 1003.) The test for the constitutionality of an ordinance is that the ordinance must be reasonably related to a legitimate municipal interest. (Supra.) This is the lowest and easiest constitutional standard for an ordinance to meet. However, the party challenging the constitutionality of such an ordinance bears the heavy burden of proving that the ordinance is so arbitrary and capricious that it shocks the conscience.
"Local Laws are presumed to be constitutional and that presumption can only be rebutted by proof beyond a reasonable doubt. The plaintiffs must show that ' "no reasonable basis at all” ’ existed for the ordinance”. (Vecchio v Griffin, supra, at 1003, quoting Lighthouse Shores v Town of Islip, 41 NY2d 7, 12 [1976].)
At the outset, the defendant’s interstate commerce argument must fail. First, there is no proof in the case at bar that any of the defendant’s drivers received summonses outside the Village of Westbury. Thus, the defendant’s interstate commerce argument has no merit. Congress has explicitly exempted taxicabs from Federal regulation because taxicabs are local in nature. The Miscellaneous motor carrier transportation exemptions, 49 USC § 10526 (a) (2), states that:
"The Interstate Commerce Commission [hereinafter ICC] does not have jurisdiction * * * over * * *
"motor vehiclefs] providing taxicab service and having a capacity of not more than 6 passengers and is not operated on a regular route or between specified places”.
The ICC has consistently interpreted taxicab service as inherently local in activity, not involving transportation distances more than 70 miles. (Interstate Commerce Commn. v Mr. B’s Servs., 934 F2d 117 [7th Cir 1991].)
However, in Buck v California (343 US 99 [1952]), the Supreme Court of the United States stated: "The Interstate Commerce Commission * * * has promulgated regulations establishing minimum qualifications for drivers of motor vehicles for carriers, including taxicabs * * * [t]his does not prevent the state or a subdivision thereof * * * from providing additional specifications as to qualifications”. (Supra, at 101-102.) The Court went on to state: "The operation of taxicabs is a local business. For that reason, Congress has left the field largely to the states.” (Supra, at 102.)
*1050 In Buck (supra), the defendant was charged with driving taxicabs in the unincorporated area of San Diego County without a permit. The defendant picked up passengers in Mexico and transported them across the United States border, across the unincorporated area of San Diego to points not in the unincorporated area where they were arrested. The Supreme Court ruled that taxicabs are so detached from interstate or foreign commerce that "so long as there is no attempt to discriminatorily regulate or directly burden or charge for the privilege of doing business in interstate or foreign commerce, the regulation is valid.” (Supra, at 102.) The Court stressed that taxicabs are " 'essentially local’ ”. (Supra.)
In the case at bar there is no proof that the defendant’s taxicabs are involved in interstate commerce. The only relation to interstate commerce would be passengers being picked up at the Long Island Railroad Station in the Village. However, that is only an indirect relationship to interstate commerce because all the activity in the instant action occurred within the borders of the Village.
In Bakalar v Lazar (71 Misc 2d 683 [Sup Ct, NY County 1972]), the defendant complained that the amendments to rules governing the regulation of taxicabs in New York City interfered with interstate commerce because the regulations extended to activity in Nassau and Westchester Counties and Newark, New Jersey. The court stated that the amended rules carried with them a " 'strong presumption of constitutionality’.” (Supra, at 686, quoting Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541 [1956].) The court upheld the validity of the rules reasoning that "the validity of such rules is not affected by the mere fact that they may incidentally embrace activities beyond the city limits.” (Supra, at 686.)
In the case at bar, the defendant has failed to establish that the local Taxicab Law is an attempt by the Village of West-bury to burden or discriminate against interstate commerce. (See, Bakalar v Lazar, supra, at 687.) It is not enough that the Village law may incidentally affect taxicab activity beyond the Village’s geographical borders. There must be a direct attempt by the Village to interfere with interstate commerce. The defendant claims that the Village requires the entire world to be licensed by the Village in order for it to pick up passengers within the Village. If this is true, however, the Village is not exceeding its authority by making such a requirement.
The defendant also complains of the denial of his appli *1051 cations by the Taxi Commission. The Village did not abuse its discretion by denying the defendant’s applications. In Matter of Howell v Benson (90 AD2d 903 [3d Dept 1982], supra), the defendant complained of the denial of applications he made to the City of Utica for a taxi license. The City denied the applications based upon the defendant’s violations of the City’s taxicab ordinance while his license applications were pending. The defendant "(1) operated taxicabs within the city without a license; [and] (2) picked up fares” into and out of the City by his drivers. (Supra, at 903.) The Court ruled that the defendant failed to rebut the "heavy presumption in favor of the ordinance’s constitutionality.” (Supra, at 904.)
In the case at bar the local law mirrors the one at issue in Howell (supra). As in Howell, the Village of Westbury requires a license for the mere picking up of fares within its borders, regardless of the passenger’s destination. The Village has the power to grant or deny license applications. The Village is authorized "to take reasonable steps to see that the applicant is a fit and proper person to engage in the license business”. (Matter of Howell v Benson, supra, at 903, citing Matter of Barton Trucking Corp. v O’Connell, 7 NY2d 299, 307 [1959].) Past violations of the Village ordinance are sufficient grounds for denial of the applications. (See, Matter of Howell v Benson, supra.)
The court has been able to find at least one case that ruled that a village’s regulation of taxicabs was invalid. In People v Ethridge (29 Misc 2d 215 [Nassau County Ct 1961]), the defendant’s taxicabs were licensed with the Township of Hempstead, but not with the Village of Hempstead. The court ruled that the law that provided that taxi drivers are to have a license solely for using the streets while carrying passengers without regard to whether or not they were soliciting business was invalid. The defendants did not hold themselves out for hire to the public generally, but were instead responding to particular calls. The law at issue provided that "[n]o taxicab shall ply for hire upon the streets of the village without first obtaining an annual license as hereinafter provided.” (Supra, at 217.)
The case at bar is distinguishable from Ethridge (supra) in that the local law does not make it a violation merely to use the streets of Westbury without a taxi license. In contrast, the Village makes it a violation to merely pick up a passenger without a license. In Ethridge, the law made it a crime if one were to drive a taxi through the village without a license. *1052 There is no indication in the case at bar that it is a crime to use the streets within the Village without a taxi license.
The defendant claims that he has been selectively prosecuted by the Village of Westbury. The defendant must meet a heavy burden of proof to sustain such an allegation. (People v Utica Daw’s Drug Co., 16 AD2d 12 [4th Dept 1962].) The doctrine of selective enforcement stemmed from the case of Tick Wo v Hopkins (118 US 356 [1886]), which held that a law valid on its face could be held invalid if it is applied in violation of the Equal Protection Clause of the United States Constitution.
The recent case of People v Bergen Beach Yacht Club (160 Misc 2d 939 [Crim Ct, Kings County 1994]) outlines the test of selective enforcement in New York State. First, to overcome the heavy presumption of constitutionality, a defendant must introduce prima facie evidence which demonstrates a strong likelihood of success on the merits. (Supra, at 943, citing Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 695 [1979].) Next, the defendant must show the law is "not applied evenhandedly to others similarly situated and that selective enforcement of the law was invidious and intentionally predicated on impermissible and unacceptable standards.” (160 Misc 2d, at 943, supra.) Unacceptable standards include race, religion or other arbitrary classifications. (Matter of DiMaggio v Brown, 19 NY2d 283 [1967].) There must be a " 'clear and intentional discrimination’ ” (19 NY2d, at 290, supra), and the "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.” (Supra, at 290, quoting Oyler v Boles, 368 US 448, 456 [1962].)
In the case at bar the defendant has offered no evidence that he is the victim of selective enforcement of the local law. He has failed the first part of the test outlined in the Bergen case (supra), in that he has not shown a strong likelihood of success on the merits. The defendant has not supplied the court with affidavits or testimony by witnesses who can attest to the fact that the law is being selectively enforced. The fact remains that the defendants’ drivers were not licensed when they were given summonses. There is no proof that the defendant received these summonses for any other purpose *1053 besides violating the local law. As such, his selective enforcement argument must fail.
The court holds that the defendant’s application to dismiss is denied and that the local Taxicab Law (Village Code § 40-7) is a valid exercise of the Village’s police powers.