OPINION OF THE COURT
Judith A. Rossiter, J.
Defendant John Kadar is charged with one count of employing a driver who lacks a taxi driver’s license and one count of operating a taxicab without a license, alleged violations of Code of the City of Ithaca § 232.69 (B) (3) and § 232.63. Defendant Cindie Bobnick is charged with one count of employing a driver without a taxi license and four counts of operating taxicabs without a proper license. Mr. Kadar is president and chief executive officer of University Taxi, Inc. and Ms. Bobnick is identified as the owner/operator of Finger Lakes Taxi, Inc. The court held a consolidated nonjury trial for both defendants on all charges, and based on the evidence presented at that time, finds and concludes as follows.
The allegation against Mr. Kadar is that on September 21, 2005, at approximately 1:00 a.m., he permitted an employee of University Taxi, Inc. to pick up a fare at Charles Street Apartments within the city of Ithaca and transport that fare to Titus Towers, also within the city of Ithaca, when said employee did not have a taxicab driver’s license. The allegations against Ms. Bobnick are that she permitted employees of Finger Lakes Taxi, Inc. to transport fares solely within the city of Ithaca as well. Complaints specifically allege that on November 4, 2005, she permitted a driver to transport passengers solely within the city of Ithaca up to seven times on that date, based on an officer’s review of the driver’s log sheet. It is further alleged that on November 12, 2005, at approximately 9:30 p.m., Ms. Bobnick permitted an employee to transport a fare from Thurston Avenue within the city of Ithaca to an address on Taughannock Boulevard within the city, and that on November 26, 2005, at approximately 12:30 a.m., Ms. Bobnick permitted a driver to transport a passenger from the 100 block of South Cayuga Street to the 500 block of South Aurora Street within the city of Ithaca, and, finally, on December 6, 2005, at approximately 5:30 *859 p.m., she permitted an employee to transport a fare from Spencer Street to Lake Street within the city of Ithaca. On all these occasions, it is alleged that the driver lacked a taxicab driver’s license. The defendants argue that the vehicles in questions were livery vehicles, not taxicabs. As livery vehicles, defendants claim, neither the vehicle nor the drivers would be subject to city of Ithaca statutes regarding operation of taxicabs. In addition, counsel for Mr. Kadar raised the issue of whether or not the accusatory instruments filed against Mr. Kadar are sufficient as a matter of law because they were filed against him, personally, as opposed to the corporation, University Taxi, Inc.
Code of the City of Ithaca, chapter 232, article VI, § 232-56 defines a taxicab as
“[a]ny motor vehicle engaged in the business of carrying persons for compensation, whether the same is operated from a street stand or subject to calls from a garage or radio station or otherwise operated for compensation, except vehicles subject to the provisions of the Transportation Law or used by undertakers in carrying on their undertaking service.”
Furthermore, section 232-63 of the Code requires that any person who uses or keeps for hire within the city, a taxicab, must have a license therefor. Section 232-57 also requires that any person who shall operate or drive a taxicab must have in force and effect, a taxicab driver’s license issued by the city of Ithaca. The exception set forth within the Code, other than that for undertakers, is the exclusion of vehicles subject to the provisions of the Transportation Law. Article 7 of the Transportation Law of the State of New York provides rules for common carriers. However, Transportation Law § 151 (11) and (12) specifically exempt taxis and liveries with the seating capacity of fewer than 15 passengers from state regulation when the service is conducted wholly within a municipality authorized to adopt an ordinance relating to registration and licensing under the General Municipal Law (General Municipal Law § 181). It should also be noted that taxicabs are exempt from federal regulation (see People v Jabaar, 163 Misc 2d 1045 [1994]). In general, local governments cannot exercise “home rule” in an area preempted by New York State law (NY Const, art IX, §2 [c]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]). According to the New York State Attorney General, however, the language of section 151 of the Transportation Law specifically authorizes a municipality to regulate certain *860 “transportation for compensation” including taxi or livery services, provided such service is conducted wholly within its boundaries (1996 Ops Atty Gen No. I 96-3). The same opinion goes on to conclude that a municipality may not regulate van services, but is authorized to regulate vans used as taxicabs where such taxicab service is provided wholly within municipal boundaries.
As noted above, the exception set forth under Transportation Law § 151 authorizes a municipality with a population under 1,000,000 to adopt its own ordinance relating to registration and licensing of taxis or liveries, pursuant to General Municipal Law § 181 (1). That statute states, in pertinent part, that municipal officers in cities may adopt ordinances regulating the registration and licensing of taxicabs and may limit the number of taxicabs to be licensed (see also People v Cassese, 43 Misc 2d 869 [1964]). Counsel for defendant Bobnick argues that Vehicle and Traffic Law § 498 (1) restricts local regulation of taxis and liveries to cities where the population is 1,000,000 or more. However, as clearly set forth in Transportation Law § 151 (11) and General Municipal Law § 181 (1), home rule as to regulations regarding taxis and liveries is available to smaller cities such as Ithaca. In fact, it is considered to be well-settled law that a municipality may regulate and license a taxicab business for the purpose of maintaining order, enforcing laws, protecting property, and caring for the safety, health, comfort, and general welfare of the inhabitants and visitors to the city (People v Chimino, 39 Misc 2d 555 [1963]; see also 17 NY Jur 2d, Carriers § 32). At the same time, courts have made distinctions between statutory regulation of taxicabs or “hacks” on the one hand, and livery or coaches on the other. In one such case, the court held that a livery is a vehicle hired by personal contract and without solicitation on public streets (see People v Sullivan, 199 Misc 524 [1951]). Similarly, in the case of People v Ethridge (29 Misc 2d 215 [1961]), the court held that a vehicle not plying for hire but rather operating solely in response to previous engagements, need not be licensed (see also 17 NY Jur 2d, Carriers § 101). However, the Village Court of the Village of Westbury upheld a village code provision that required a license for the mere picking up of a passenger within the village, regardless of the passenger’s destination (People v Jabaar, 163 Misc 2d 1045 [1994]). The court in Jabaar distinguished the holding in Ethridge on the grounds that the law in the Ethridge case required a taxicab license for a driver transporting passengers *861 through the village. The rule sought to be applied in Ithaca is not as restrictive as that in Jabaar; rather, it resembles the ordinance for the city of Yonkers set forth in People v Cassese (43 Misc 2d 869 [1964]). The Yonkers ordinance defined taxicab as a vehicle in the business of carrying persons for hire, whether operated by radio/telephone or electronic equipment of any type, “for the purpose of receiving and relaying designated proposed passenger information, whether the same is operated from a street stand or . . . subject to call from a garage, office or other place of business” (at 871). As indicated above, the court in Cassese held that a private limousine service that did not cruise the streets of the city soliciting business or obtained requests for service by telephone was not subject to the statute. In the case at bar, it does not appear to be disputed that the vehicles referred to by the defendants as livery vehicles were dispatched from an office or garage to pick up fares within the city of Ithaca for delivery at another location within the city. It is even possible that in one or more instances, a vehicle was stopped by someone on a city street, requesting transportation to another location within the city. There is no evidence that any of the vehicles in question transported their passengers pursuant to any private contract.
The essential question then, is, what is a taxicab? One would hope that the portion of the Vehicle and Traffic Law that deals with words and phrases might provide the answer. However, section 148-a of the Vehicle and Traffic Law defines taxicab as “[e]very motor vehicle, other than a bus, used in the business of transporting passengers for compensation, and operated in such business under a license or permit issued by a local authority.” The definition of livery, on the other hand, is “[e]very motor vehicle, other than a taxicab or a bus, used in the business of transporting passengers for compensation” (Vehicle and Traffic Law § 121-e). In this regard, the Vehicle and Traffic Law resembles a cheap dictionary, defining one term by referring to the other and vice versa. This brings us full circle to the more expansive definition provided by Code of the City of Ithaca § 232-56, which, as stated previously, includes under the definition of taxicab: “Any motor vehicle engaged in the business of carrying persons for compensation, whether the same is operated from a street stand or subject to calls from a garage or radio station or otherwise operated for compensation . . . .” (Emphasis added.) Notwithstanding the holding in People v Jabaar, the court recognizes that Transportation Law § 151 *862 (11) and General Municipal Law § 181 limit the regulation of “taxicabs” to vehicles for hire rendering service wholly within such municipality. The definition of taxicab under the Code of the City of Ithaca, then, must be interpreted accordingly. This leaves us with the classic definition usually applied to waterfowl: “If it walks like a duck, swims like a duck, and quacks like a duck, it’s a duck.” Here, the only evidence before the court is that the vehicle picked up a fare in Ithaca and dropped off the fare within Ithaca, in each case. Accordingly, by operating the vehicle as a taxicab, the vehicle is rendered a taxicab. The limitation placed on a municipality such as Ithaca, in regulating livery vehicles, applies if and when the vehicle in question is operated in whole or in part outside the municipal boundaries of Ithaca. By operating the vehicle solely within the municipal boundaries, the operator converts the vehicle to a taxicab, by definition. This is not to say that the Code of the City of Ithaca would not benefit from a cogent definition of the term “livery.” Based on the foregoing, the court finds that the nature of the charge made is in conformance with state and local law as to the facts alleged.
Turning, however, to the issue of the person or persons named within the accusatory instrument, counsel for Mr. Kadar has raised the issue of whether Mr. Kadar is the proper defendant. Counsel for Ms. Bobnick, prior to the conclusion of this matter, joined in that objection. In each case, accusatory instruments were filed against the defendants, personally. As indicated above, Mr. Kadar is the president of the corporation known as University Taxi, Inc. It also appears from the accusatory instruments that Ms. Bobnick is an officer of a corporation known as Finger Lakes Taxi, Inc. Insofar as the accusatory instruments refer to the defendants as individuals, doing business as University Taxi, Inc. or Finger Lakes Taxi, Inc., the accusatory instruments are incorrect. There is, of course, a distinction to be made between individuals doing business as a named company versus a corporation. New York State law specifically recognizes corporate defendants and the possible prosecution of same under New York State law (see e.g., CPL 600.20). Furthermore, Vehicle and Traffic Law definitions include under the term “person”: “Every natural person, firm, copartnership, association, or corporation” (Vehicle and Traffic Law § 131 [emphasis added]). Finally, the court cannot substitute the corporate entities for the individual defendants in this matter. If a proceeding is instituted by a prosecutor against an individ *863 ual defendant, it is reversible error for the court to substitute a corporation as defendant (see People v Body, 52 Misc 2d 852 [1966]).
In summary, then, the court finds that although the charges are appropriate and in conformance with state and local law, the charges were brought against the wrong person, as that term is defined under the Vehicle and Traffic Law of the State of New York. Accordingly, the court finds the defendants named in these matters not guilty, on the grounds that they are the improper parties.