*1046 OPINION OF THE COURT
Thomas F. Liotti, J.
The defendant is charged with 17 Building Code violations. It is alleged that the defendant is the owner of the building and property in question. The building in question is a residential, single family, birchwood type, red brick, split-level home whose construction is common in this Nassau County and elsewhere. The home is located at 632 Nelson Place in the Incorporated Village of Westbury, Long Island. It is also located within the Westbury Union Free School District and the Town of North Hempstead.[1]
The Village is a multiethnic, racial and religious community in the center of Nassau County. It has a population of approximately 15,500 not including undocumented immigrants.
There is a housing shortage throughout the nation which despite the venerable efforts of the Town and Village is also acute in Westbury and within the unincorporated area of the Town adjacent to it, namely New Cassel. New Cassel is part of the Westbury Union Free School District and also has a Westbury Post Office zip code. That same zip code also includes part of the East Meadow Union Free School District in the Town of Hempstead, adjacent to the Village at its southern border but not a part of the Village. That same zip code also includes part of the Village located within the Carle Place Union Free School District.
The defendant is charged with 17 Building Code violations as follows:
*1047 Summons No. Charge
11942 Renting without a permit
11943 Inadequate egress—key locks and 4 guest bedrooms
11944 Lack of operable smoke detectors
11945 Conversions, change of use of C.O.
11946 Construction without a permit
11947 Electrical work performed without a Westbury Village electrical license
11948 Electrical work done without a U/L certificate or a C.C.
11949 Plumbing work performed without a license
11950 Plumbing work without a permit
11951 Cellar used as habitable space
11952 Inadequate egress—cellar
11953 Insufficient light and ventilation
11954 List, solicit, advertise, etc., a rental unit without a permit
11955 Acceptance of deposit for rent or security for a rental unit without rental permit number
11956 Publish written listing, solicitation, advertisement, etc., a rental dwelling unit without a permit number
11957 Pool or spa installed without permits
11958 Dangerous conditions—no handrails.
Each charge, upon conviction, carries with it a maximum fine of $1,000 on a first offense and up to and including 15 days in the Nassau County jail. A consecutive sentence may then lead to a total of $17,000 in fines and up to 255 days in the Nassau County jail. The court considers these charges to be extremely serious as they threaten the property values and, far more importantly, the lives of residents. While there is a housing shortage, the court is aware of the exploitation of the poor and undocumented by some unscrupulous landlords, property owners and even absentee slumlords. Neither the court nor the Village can or will accommodate profiteers engaged in the downzoning of residential property by illegally turning single family homes into illegal occupancies. Providing for illegal housing is not a public service. It is a dangerous enterprise.
These issues adversely impact on the residential character of the community in many ways including, but not limited to, the quality of education and the costs for the rendition of additional municipal services. Homes that are zoned and taxed as single family dwellings but which are occupied illegally carry with them the additional expenses of water, utilities and garbage usage. The reality is that if you cannot afford to buy or maintain a legal, single family home, then you should not own one. Single family homes in this Village should not be viewed *1048 as investment opportunities where they can be cut up into separate apartments or rooms occupied by or rented to persons not part of a single family.
The New York Court of Appeals in McMinn v Town of Oyster Bay (66 NY2d 544 [1985]) gave the definition of a “family” which has been engrafted into our Village Code. Essentially, it is a group of people living together as a single family unit not residing in separate apartments within the home.
During the more than 26 years this court has been on this bench, it has an extensive history of deciding cases involving alleged illegal occupancies in this Village. (See generally James E. Morris, Robert G. Bogle, Maryrita Dobiel & Thomas F. Liotti, Village, Town and District Courts of New York, Practice Guide [Thomson Reuters, Lawyers Cooperative 1995-present]; see also e.g. People v Suppa, NYLJ, Oct. 8, 1997 at 1, 25, 28; People v Tran, NYLJ, Oct. 7, 1998 at 1, 25, 29, col 6; People v Ari Seigler, NYLJ, June 6, 2002 at 1, 17, 26; People v Howlett, NYLJ, May 30, 2003 at 1, 17, 23; People v Wilfred Dary, NYLJ, June 24, 2003 at 1, 21, 27, col 6; People v Beauvil, 20 Misc 3d 1116[A], 2008 NY Slip Op 51370[U] [2008]; 44 The Magistrate [No. 1] 22, 23 [spring 2004]; People v Ventura, 3 Misc 3d 1107[A], 2004 NY Slip Op 50468[U] [2004];[2] People v Ventura, 6 Misc 3d 1001 [A], 2004 NY Slip Op 51695RJ] [2004]; People v Ventura, 17 Misc 3d 1113[A], 2007 NY Slip Op 51949[U] [2007]; People v Garcia, 17 Misc 3d 1106[A], 2007 NY Slip Op 51857[U] [2007].)
Ironically, the defendant has alleged that Code Enforcement Officers and the Village are discriminating against him because he is African-American. This remarkable assertion is made despite the fact that Beaumont Jefferson, the Treasurer for Nassau County and a Trustee in the Village who is also African-American, resides on Nelson Place, the same block from which these charges emanate. Also, on that same street resides the Ewing family. The Ewings are all African-Americans. Floyd Ewing is a lawyer and past president of the Westbury Union Free School District Board of Education.
It should also be noted that Village Trustee William Wise, an African-American, also resides in that same part of the community. The late Village Trustee Alphonse Campbell (deceased), *1049 also an African-American, lived in that part of the community known as Sherwood. His wife, an African-American, continues to reside there with her daughter Karin, who is a former member of the Westbury Union Free School District Board of Education and is a Commissioner in the Westbury Village.
This Justice is the former chair of the Civil Rights Committee of the Nassau County Bar Association and in 1997 he received the Martin Luther King, Jr. Award from Nassau County and its Human Rights Commission. Thus, it is particularly dumbfounding that the defendant and/or his counsel would make such wild accusations without knowing of this Village’s history where it has long been proudly known as the “Community For All Seasons.”
For example, the Islamic Center of Long Island, Inc. is also located not far from Nelson Place. The Village is proud of its diversity. The defendant’s bald and unfounded claims of discrimination or a violation of civil rights merely serve to set back the cause of civil rights. Such false allegations cannot be used as a shield or defense with respect to violations of the law.
The defendant has filed a motion alleging that three Inspectors from the Village’s Building Department conducted an illegal search of his premises without a warrant and he avers that this was in violation of the exclusionary rule pursuant to Mapp v Ohio (367 US 643 [1961]). While defense counsel has not referred to it, he apparently is requesting a Dunaway v New York (442 US 200 [1979]) hearing based upon alleged lack of probable cause to enter the home without a warrant. Nowhere has the defendant alleged that any evidence may constitute “fruit of the poisonous tree.” (Wong Sun v United States, 371 US 471 [1963]; People v Gethers, 86 NY2d 159 [1995].) Attached to his motion is an affidavit from the defendant that the search was warrantless and therefore illegal. He further states that since there was not a dangerous condition at the premises that the Building Inspectors should have been required to obtain a warrant and that the failure to do so warrants a suppression of all evidence and therefore a dismissal of the charge. Also attached to his motion is a second affidavit from Cassandra Celestine, the defendant’s friend and a resident of Hempstead. Mrs. Celestine stated:
“1. I live at 36 Hilton Street, Hempstead, New York 11550.
“2. On October 13, 2016, I was visiting my friend *1050 Lloyd Gray at his home at 632 Nelson, Westbury, NY.
“3. A person, white male, 6 ft. tall about 205 lbs., who I later learned was an officer from Code enforcement for the Village of Westbury, suddenly banged on my friends door while I was there. Fortunately the door was metal, since the banging was so hard and so loud I was alarmed and thought it was going to literally be broken down.
“4.. Frankly, at first I thought it was a break in, forced entry attempt, and hid in a closet out of fear of being attack by the unknown intruder.
“5. When I peeked out of the door I saw a tall white male about 6 ft. tall 205 lbs. alone.
“6. After a while he left and left behind many, many citations. When I spoke to Lloyd afterward he was totally embarrassed and expressed he felt violated. “7. I understand and discovered that the same method was used against some of Lloyd Gray’s other neighbors in the area, at least one of whom was arrested.
“8. I have stepped forward and trust the Court or its agencies will not retaliate against me, Lloyd Gray or Lloyd’s neighbors, who are primarily African American and black as I am; and won’t retaliate for stating this observation of its officer’s behavior. As some in the Court may agree we are historically at risk of being targeted, given our history here. At least one neighbor is afraid to speak up and do not want their names or identities given out, from of fear of arrest, intimidation of extreme fines, being targeted and retaliation.
“9. I also frankly was disturbed by what happened and went as far as to read parts of the Court transcript that Lloyd Gray ordered of a hearing on this; I see that through its Officer’s conduct here that the Court can fine the folks in that area up to $10,000 for each ticket and 15 days in Jail for each one, and these officers’ give them out freely.
“10. The Department of Justice investigated similar conduct in Fergusson Missouri that investigation was spurred and preceded by the shooting death of one of its black and minority Citizens. The publicized report, discovery, was that the government needed money to close its budget gaps and *1051 laid on the backs, with hostility, of minorities to get that money through frivolous citations and forced money demands, under threat of imprisonment and arrest, if not complied with. See Washington Post 12 point summary https://www.washingtonpost.com/ news/pos t-nation/wp/2 015/0 3/04/the-12-key-highlights-ffom-the dojos-sc.”
These bald, unsupportable statements are scandalous. For the most part they are also in the nature of hearsay. Unless a nexus is shown between them and the charges herein, they will not be considered by this court. Allegations that a prosecution is being selective or that it is based upon race requires a great deal more than mere hyperbole. (See People v Herbert Rogers, NYLJ, Mar. 12, 1990 at 28, col 3 [Nassau County Ct 1990]; People v Jabaar, 163 Misc 2d 1045 [1994].)
The defendant attaches to his motion papers his own affidavit contending that the search of his home was illegal because the Building Inspectors did not have a warrant and that therefore all evidence obtained as a result should be suppressed and the case dismissed. But the defendant does not allege by affidavit that he did not consent or that there was no probable cause. He does not explain why he opened the door or why he allowed entry into his home or why he did not demand that the Inspectors leave. In reality, he might have called 911 or the police if he believed that his home was the subject of an illegal entry by an unauthorized person. He does not allege that the Building Inspectors failed to provide appropriate identification. Much like the affidavit submitted as part of his motion from his friend, it is based upon hearsay. For example, paragraph 6 of his affidavit reads: “I was then advised by some of my neighbors that they were treated similarly.”
The inspection occurred on October 12, 2016 and since that time the defendant has not complained to anyone about an alleged illegal entry into his home. He has not filed a notice of claim nor instituted any collateral proceedings.
The People’s papers in opposition to the defendant’s motion are indeed most impressive in that they contain a memorandum of law, an affirmation by the Village Attorney and an affidavit of the Building Inspector present at the time of the inspection. The People have argued two points. The first point is that the search was consented to by the defendant. The Inspector was accompanied by a second Inspector. The Inspectors identified themselves and showed their picture identifications and badges.
*1052 The People’s papers also indicate that photos of the interior of the premises, not people, were taken. Their papers include the research done by the Building Inspectors which gave rise to the inspection and probable cause. The Building Inspectors commendably did a search on the Internet of rental advertisements by the defendant for the rental of his home as a “bed and breakfast” or boarding house. The reviews which were posted showed that this was being done for quite some time and the defendant has been charging $75 or more per night for the rental of rooms which also included breakfast, and access to a hot tub and steam bath, among other purported accoutrements.
The Building Inspectors then tracked the advertisements to 632 Nelson Place. In checking the Building Department file they learned that the defendant had never filed for a rental permit application. If a rental permit had been filed, it would have possibly allowed for the rental to a single family since the home is located in a single family zone. It would not have allowed for the use as apparently conducted by this defendant. Since it has been said that “everyone is presumed to know the law except a law student waiting to take the bar exam,” the defendant’s actions show an appalling ignorance of the law and a flagrant disregard of it.
The court credits the affidavit and supporting exhibits by the Building Inspector. Accordingly, the court also finds that the defendant has failed to meet a minimum threshold for the holding of a suppression hearing. (People v Scully, 14 NY3d 861, 863-864 [2010]; CPLR 3021; People v Becker, 20 NY 354, 355 [1859].) The court finds that the two affidavits submitted in support of the motion are incompetent as a matter of law. The court finds that the search was consensual and based upon probable cause to believe that one or more Building Code provisions were being violated. (See US Const Amend IV.) Potential evidence such as photographs, if properly authenticated at a trial, will not be suppressed. Other potential evidence such as the Internet search which provided the basis for probable cause may or may not be considered by the court at a trial. Again, the rules of evidence relative to hearsay will apply to all proffers at trial.
On the other hand the court, sua sponte, finds that the recording and all statements attributed to the defendant should be suppressed for the reason that the People’s intention to utilize these statements at trial were not disclosed until now. CPL *1053 710.30, People v Ranghelle (69 NY2d 56 [1986]) and People v O’Doherty (70 NY2d 479 [1987]) provide that notice of the People’s intention to use a defendant’s statements against him at trial must be provided to a defendant within 15 days of arraignment.
In addition, the court now holds in a second point of first impression that when a building inspector has made a determination to charge a defendant, they must provide the defendants with Miranda v Arizona (384 US 436 [1966]) warnings. We are a local criminal court and, therefore, the protections provided for individual defendants under our Constitution must apply here.
Police will often withhold the giving of Miranda warnings during the course of an “investigation.” Here, the People have averred in their supporting papers that evidence outside of the search such as what they obtained online, supra, caused them to conclude that the defendant had violated at least eight Code provisions. Knowing that before going to the home gave them probable cause but it also mandated that they advise the defendant of his rights before recording statements from him.
Today this Village Court provides for two new provisions in the law which will henceforth apply in this court and hopefully others that may choose to follow this holding. The first part of these new procedures which the court is deciding for the first time, only because they have not presented themselves previously to the best of its knowledge, is that compliance with CPL 710.30 shall be required as a prerequisite for the admission of any statements by a defendant. Second, when a building inspector finds that he or she is going to issue violations they must give the prospective defendant Miranda warnings.
Since the People have stated at oral argument that they do not intend to offer any statements of the defendant at trial, except for his consent, these issues as referred to herein are dicta and meant to provide notice that this court is a local criminal court and as such endeavors to comply with the Criminal Procedure Law of New York as well as the Federal and New York State Constitutions.
The motion to dismiss and for suppression except as provided herein is denied.

. Since the home is located within the Incorporated Village, the Municipal Home Rule Law of the State of New York gives the Village jurisdiction over the zoning for the property. The local laws pertaining to zoning and building codes govern the maintenance of single family homes within the Village. The Articles of Confederation (our first US Constitution), as adopted in 1777 and ratified on March 1, 1781, provided in article 2 thereof that “[e]ach state retains its sovereignty, freedom, and independence, and every power, jurisdiction (authority to act), and right, which is not by this confederation expressly delegated to the United States, in Congress assembled.” This same provision also became a part of the Bill of Rights when it was adopted on December 15, 1791. US Constitution Amendment X provides: “The Powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.” Article IX, § 1 of the New York State Constitution entitled, “Bill of rights for local governments,” gives villages such as Westbury the power to enact local laws regarding zoning and other matters. These are powers specifically “reserved to the states” and therefore local governments such as the Village of West-bury. The Municipal Home Rule Law gives villages the power to pass local laws relating to zoning.

. This decision, published with guidelines for the issuance of search warrants, is reportedly the longest decision ever published by a village or town justice in the State of New York at 109 pages.